Joe Richard **LANSDALE** et al.

v.

**TYLER JUNIOR COLLEGE.**

**Civ. A. No. 5201.**

United States District Court,
E. D. Texas,
Tyler Division.

Oct. 9, 1970.

William H. Kugle, Jr., Athens, Tex., for plaintiffs.

William S. Reeves, Tyler, Tex., for defendant.

## MEMORANDUM OPINION

JUSTICE, District Judge.

The named plaintiffs are three long-haired young males who bring this suit to enjoin the operation and enforcement against them of a section of the "Dress Code", a comprehensive set of regulations governing the appearance of students which was adopted by the Tyler Junior College Board of Trustees shortly before the beginning of the 1970 Fall Semester.

A temporary restraining order allowing plaintiffs to register was entered August 28, 1970, and a hearing on plaintiffs' motion for preliminary injunction was held September 1, 1970, the first day of the Fall Semester. The questioned regulation reads as follows:

"Extreme hair styles are prohibited. The hair in front should not cover the eyebrows. The hair must be neatly trimmed around the ears and must be above the collar. Beards are prohibited. Side burns may be worn no longer than the bottom of the earlobe. Mustaches, if worn, must be neatly trimmed so as not to extend below or beyond the upper lip."

One of the named plaintiffs, age 22 and a Vietnam veteran, attended the 1969 Summer Session, 1970 Spring Semester, and the first semester of the 1970 Summer Session at Tyler Junior College. During his attendance, he was a "straight A" student whose conduct was never questioned by college authorities. At the hearing on plaintiffs' motion for preliminary injunction, his hair reached his shoulders. The hair of all the named plaintiffs, although long, appeared clean and neatly trimmed. Each named plaintiff gave fashion and personal expression as his justification for wearing long hair. They denied any religious, political or moral reasons for their deviation from the norm.

The named plaintiffs attempted to register at the announced time for the 1970 Fall Semester. Each named plaintiff was furnished with a copy of the Dress Code and informed by a college official that he could not register until his hair style conformed to the regulation. No other reason was given for refusal of registration. They apparently qualified, otherwise. The named plaintiffs later filed this suit, for themselves and others similarly situated, under the provisions of 42 U.S.C. § 1983 and 28 U.S.C. § 1343, alleging, *inter alia*, that the enforcement by college officials of such regulation against them was arbitrary and unreasonable and violated their constitutional rights. The point in issue is the applicability vel non of that portion of the 14th Amendment prescribing that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

■ Initially, it must be recognized school officials are given wide discretion in formulating rules and regulations. Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966); Ferrell v. Dallas Independent School Dist., 392 F.2d 697 (5th Cir. 1968), cert. den'd, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1969). Specifically, the Texas Legislature has conferred upon the boards of trustees of junior college districts the exclusive power to manage and govern internal school affairs, including the authority to adopt such rules and regulations as they deem proper. Texas Education Code, Sections 51.073 and 23.26, V.T.C.A. This discretion, however, has been limited. In West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943), the Supreme Court of the United States held:

"The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all its creatures—Boards of Education not excepted. * * * That they are educating the young for citizenship is reason for scrupulous protection of the Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes."

In Tinker v. Des Moines Independent School District, 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969), the Supreme Court referred to the rights of students:

"In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves

must respect their obligations to the State." 393 U.S. at 511, 89 S.Ct. at 739.

Judge Lynne, in Zachry v. Brown, 299 F.Supp. 1360, 1362 (N.D.Ala.1967), well summarized the case law on this subject:

"The wide latitude permitted legislatures of the states and therefore the administrators of public colleges to classify students with respect to dress, appearance and behavior must be respected and preserved by the courts. However, the equal protection clause of the fourteenth amendment prohibits classification upon an unreasonable basis."

■ *Tinker* requires that the student-plaintiffs be regarded as "persons" under the Constitution. Certainly they are entitled to this status, for in the judgment of Congress and the President, as recently expressed in legislation, all males of the age of the two younger named plaintiffs are now deemed sufficiently mature to exercise the franchise, and have long been required to bear arms in defense of their country. As "persons", they may rightfully demand the same rights and privileges granted other persons under the Constitution. Specifically, they are entitled to question the reasonableness of any regulation directed toward them.

If this regulation involved some identifiable class other than allegedly disruptive students, its unreasonable and invidious character would be instantly apparent, especially to the affected class. To illustrate, if the Texas legislature were to be so unwise as to enact the questioned regulation into statutory form, making it applicable only to a single segment of the population—such as bankers, physicians, lawyers or construction workers—and barring violators from continued employment in their occupation, one can easily visualize the onrush to the courthouses of the state that would ensue.

Moreover, the converse of the regulation also demonstrates its basic lack of reasonableness.

"The requirement that these plaintiffs cut their hair to conform to normal or conventional styles is just as unreasonable as would palpably be a requirement that all male students of the college wear their hair down over their ears and collars." Zachry v. Brown, supra, at 1362.

■ The right of students to the free choice of hair styles granted other citizens has been upheld in cases involving the First, Ninth, and Fourteenth Amendments. Regulations limiting students' rights in this particular can be validated only in instances where school officials can show a reasonable relationship between the forbidden style and the health, welfare, morals, and discipline of the student community. Ferrell v. Dallas Independent School District, supra; Griffin v. Tatum, 425 F.2d 201 (5th Cir. 1970); Stevenson v. Wheeler County School Board of Education, 426 F.2d 1154 (5th Cir. 1970); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. den'd., 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970); Calbillo v. San Jacinto Junior College, 305 F.Supp. 857 (S.D. Tex.1969).

In Griffin v. Tatum, supra, 425 F.2d at 203, the Court of Appeals for the Fifth Circuit said:

"The touchstone for sustaining such regulations is the demonstration that they are necessary to alleviate interference with the educational process."

■ The college officials, as defendants, contended at the hearing that the regulation was essential for maintaining campus discipline and a proper, efficient and effective educational environment. Two defendants, the college president and the academic vice-president, referred during their testimony to educational conferences they had attended. They were informed by fellow academicians at the meetings that long-haired male students had been in the forefront

of disruptions and disorders at their respective colleges. They also testified that they had viewed, on television, long-haired male college students participating in riots, marches, and confrontations with authorities, and that they had read about similar activities of such students in newspapers, educational journals, and other periodicals. A Tyler Junior College foreign language professor testified that long-haired male students caused disruptions in a class he had previously conducted at a North Carolina college. Each of these three testified that in his opinion the admission of long-haired male students to Tyler Junior College inevitably would result in similar disruptions. Their rationale apparently was that since long-haired students caused disruptions in other institutions of learning, all long-haired male students are potential troublemakers.

I am unwilling to accept a syllogism so perverse and jejune as this to justify the humiliating and demeaning restrictions which this regulation would place on the plaintiffs. The foregoing testimony was directly contradicted by the unchallenged testimony of plaintiff Harders, the Vietnam veteran, who stated that his hair, which had not been cut since February 1970, was longer during the first semester of the 1970 Summer Session than prescribed by the regulation, and that his hair style provoked no disruptions of any type. The testimony also disclosed that no substantial disruptions occurred after some freshmen football players were, in the past, compelled to wear "Mohawk" hair styles by upperclassmen. (This involved the shaving of the unfortunate's head in such manner as to leave only a strip of hair, extending across the crown of his head from the forehead to the nape of the neck.)

Furthermore, the defendants offered no evidence of scientific research or studies indicating that long-haired males necessarily are predisposed to violence. Indeed, it would be virtually impossible to establish such a proposition. I have before me the portraits of all signers of the Constitution of the United States, with the exception of Thomas Fitzsimmons. The vast political and philosophical differences which existed between such signers as James Madison, Alexander Hamilton, and Gouverneur Morris, as well as among other delegates to the constitutional convention, including George Washington and Benjamin Franklin, is well revealed in the accounts of the debates preceding the adoption of the Constitution. Yet, despite their dissimilarities, 37 of the 39 delegates to the constitutional convention displayed hair (or wig) styles which would offend the regulation in question. Moreover, such varied contemporaries of the delegates as Robespierre, the political terrorist, Napoleon Bonaparte, the militarist, William Blake, the gentle poet and artist, and Joseph Priestley, the eminent scientist, all wore their hair long. So it has been throughout history. In any given era, a society's greatest men and its blackest villains customarily have worn the same hair style affected by most males in their respective circumstances.

> "Mankind's experience has demonstrated that in this area of fashion, fads constantly come and go as the pendulum unceasingly swings from extreme to extreme." Sims v. Colfax Community School District, 307 F. Supp. 485, 489 (S.D. Iowa 1970).

I accept, therefore, the opinion of the plaintiff Hutchinson, who said:

> "I believe that my hair has nothing to do with my character, and that I am going to be the same person with or without long hair; * * * and this goes for any person, I think."

No evidence having been presented at the hearing which would justify the belief that an individual with long hair will change dramatically in character once his hair is shortened, I conclude that this regulation, which is designed to eliminate all male students with long hair as a deterrent to disruption, is unreasonable, discriminatory, and void.

The college officials' desire to maintain discipline and order is understandable and commendable. This, however, cannot be achieved by the wholesale elimination of select students who, hypothetically, may provoke disruptions. Undifferentiated and unrealized fears of this nature may not be used as the basis for denying constitutional rights. Tinker v. Des Moines Independent School District, supra; Calbillo v. San Jacinto Junior College, supra. The school officials may enforce rules and regulations which discipline individuals who, in fact, cause disorders and disrupt the school's educational environment. Such disciplinary regulations are suited for placing sanctions on the guilty. The regulation presently before this court, however, punishes the guilty and innocent alike.

The remaining question is whether the named plaintiffs may maintain this suit as a class action. The plaintiffs seek to represent all other persons similarly situated, all prospective students of Tyler Junior College, and all other persons who have been victims of the arbitrary and discriminatory actions of the defendant. Rule 23, F.R.Civ.P., covers class actions. It reads, in its pertinent part, as follows:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties will fairly and adequately protect the interests of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief \* \* \* with respect to the class as a whole. \* \* \*"

From the evidence submitted at the hearing, it may be deduced that about 40 students with long hair presented themselves for registration. All were turned away by the school authorities. It appears that some had their hair trimmed and were later allowed to register. The number of those denied admission who refused to comply with the regulation and registered at some other college or simply ended their pursuit of an education was not recorded nor was it revealed by the evidence. There was also no evidence as to the number of long-haired males who made no effort to register at Tyler Junior College because of their knowledge of and opposition to the hair-styling regulation. Likewise, there is no way to ascertain how many long-haired males will desire to register at the college in the future. In fact, it is possible that numbers of persons yet unborn may be the beneficiaries of the decision made in this case.

It is obvious that the class which the named plaintiffs seek to represent is so numerous that joinder of all members is impracticable. Also, it is apparent that the question of the constitutionality of the regulation is common to the class, that the claims of the named plaintiffs are entirely typical of the class, and that they will fairly and adequately protect the interest of the class. Consequently, the named plaintiffs have met the requirements of subdivision (a). Carpenter v. Davis, 424 F.2d 257 (5 Cir. 1970); Broughton v. Brewer, 298 F. Supp. 260 (S.D.Ala.1969); Snyder v. Board of Trustees, 286 F.Supp. 927 (N. D.Ill.1968).

Subdivision (b) (2) has reference to class actions brought to force or prevent action that really concerns members of the class individually. Cohn, "The New Federal Rules of Civil Procedure, 1966",

54 Georgetown Law Journal 1204, 1216. The Note of the Advisory Committee on the Rules, 1966, to Rule 23, as revised, states:

"Action * * * is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."

In illustration: Two welfare applicants may properly bring a class action to enjoin enforcement of state statutes requiring every applicant to have continuously resided for one whole year in the state immediately preceding his application, the class consisting of applicants who had not resided in the state for one year immediately past. Johnson v. Robinson, 296 F.Supp. 1165 (N.D.Ill.1967). One teacher may be a proper representative of the class of prospective teachers for purposes of challenging a loyalty oath statute by injunctive relief. Gilmore v. James, 274 F.Supp. 75, 86 (N. D.Tex.1967). An action by a Negro high school seeking admission into a high school athletic association is a proper class action in behalf of all high schools in the state who are or may become applicants for admission regardless of their racial composition. St. Augustine High School v. Louisiana High School Athletic Association, 270 F.Supp. 767 (E.D.La. 1967), affirmed sub nom. Louisiana High School Athletic Association v. St. Augustine High School, 396 F.2d 224 (5 Cir. 1968). A suit under the Civil Rights Act by an employee challenging employment and promotional discrimination is, by the nature of the claim asserted, appropriate for class action under (b) (2). Jenkins v. United Gas Corp., 400 F.2d 28 (5 Cir. 1968). See: 3B Moore's Federal Practice 23–651, ¶23.40.

Considering the explicit terms of subdivision (b) (2) and the foregoing cases, it is clear that the named plaintiffs are entitled to bring this suit as a class action. It is so ordered.

It is further ordered that plaintiffs' motion for preliminary injunction shall be, and it is hereby, granted.