Joe Richard LANSDALE et al., Plaintiffs-Appellees,

v.

TYLER JUNIOR COLLEGE and Harry E. Jenkins, et al., Defendants-Appellants.

No. 71–1775.

United States Court of Appeals, Fifth Circuit.

Oct. 4, 1972.

Rehearing Denied Nov. 7, 1972.

William S. Reeves, Tyler, Tex., for defendants-appellants.

William H. Kugle, Jr., Athens, Tex., for plaintiffs-appellees.

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

CLARK, Circuit Judge, with whom MORGAN, Circuit Judge, joins:

Joe Richard Lansdale and two other young men attempted to register for the Fall 1970 Semester at Tyler Junior College, a public institution of the State of Texas. However, because their hair styles did not conform to a particular section of the "Dress Code," a comprehensive set of regulations governing student appearance adopted by the Board of Trustees shortly before the school term, they were not permitted to register. Subsequently, they brought suit in the court below, under 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343, seeking to enjoin the operation and enforcement of the pertinent regulation against themselves and others similarly situated. Fed.R.Civ.P. 23(a)(3). They alleged, *inter alia*, that the enforcement of the regulation by college officials was arbitrary, unreasonable, and a violation of their right to equal protection of the laws guaranteed by the Fourteenth Amendment. The district judge granted the permanent injunctive relief prayed for. 318 F.Supp. 529 (E.D.Tex.1970). The college appeals. For the various reasons stated in separate concurring opinions, a majority of the court affirms.

Objectively viewed, there are few, if any, fundamental factual distinctions among the individual circumstances of each of the tens of thousands of college students on the hundreds of campuses in this circuit which should affect their respective constitutional statuses vis-a-vis the regulations of the educational institution in which they are enrolled. Thus, the part of Lansdale's collegiate life which can be constitutionally controlled by administrative edict would not be remarkably different if he were enrolled in any other junior or senior college in any other state. In like manner, students enrolled in a myriad of public school institutions in this circuit are, for any conceivable "Dress Code" regulatory purposes, similarly situated.[1]

In the ultimate analysis, this sameness of the campus life in the respective grade and high school and collegiate environments means that judicial scrutiny of haircut regulations in these institutions almost never calls for what is truly an adjudication of facts. Except in a relative handful of cases where unique situations exist, it is a delusion and a pretense to imagine that the decision in hair length regulation cases can be based upon an objective determination gleaned from testimony by administrators, students or experts. Pragmatically and realistically, the result of the process embodies a particular judge's subjective selection among what he views as competing values. On the one hand, he attaches his own weight of merit and importance to the personal liberty of the student to wear his hair as he wills; then, on the other hand, he assesses his notion of the importance or "relevance" of the authoritarian prerogatives which school administrators have asserted they must exercise to achieve the aims of the particular educational institution. The most important tenet in my reasoning is that the decision either that hair must be cut if the student

---

1. For example, we noted in Karr v. Schmidt, 460 F.2d 609 (5th Cir. en banc 1972), that Karr's high school situation in El Paso, Texas was substantially the same for constitutional purposes as that of his counterparts in Hillsborough County, Florida and Pampa, Texas.

is to continue his education at the school because the regulation is deemed reasonably related to a legitimate state interest, or that the school must strike the regulation from its records because it has no rational basis and therefore arbitrarily infringes a valid constitutionally protected liberty, is wrongly cast if put in the mold of a determination of fact from record evidence.

■ So long as these ad hoc appraisals continue, the only hope that both students and school officials who are identically situated will receive meaningful and consistent adjudications of their constitutional positions lies in whatever compulsion for general conformity that may fortuitously exist among independent life-tenured federal judges. This is too faint an anticipation to be acceptable. The Fourteenth Amendment guarantees to the student of equal protection and due process, and the Tenth Amendment freedom of the public official to operate the school entrusted to his care in the manner he determines best, free of federal intrusion, each merits more certainty in the law. This need for more uniform treatment of litigants whose fact situations are really identical led the majority of this court in *Karr* to conclude that a per se rule should be adopted in high school haircut regulation litigation. That rule states that no number of experts opining on the wisdom or folly of such regulations, and no volume of student, parent or school board testimony as to events or motive should provoke a decision voiding a nonarbitrary regulation of hair length on constitutional grounds. Today's case asks that we extend the scope of that per se rule to the college campus. I refuse to do so, not because the college student has constitutional rights which his lesser-educated counterpart lacks, but because as a matter of law the college campus marks the appropriate boundary where the public institution can no longer assert that the regulation of this liberty is reasonably related to

the fostering or encouragement of education. The value of the liberty hasn't changed, rather the setting in which it is to be exercised has.

Such line drawing may be attacked as arbitrary. Ofttimes three months, and sometimes only one week, separates the high school senior from the college freshman. It is likewise true that many high school students may find hair regulations so offensive as to prohibit their continued education, while an equal number of college students couldn't care less. But these are not controlling principles. The redeeming virtue of a per se rule, which far outweighs its shortcomings, is that it is more realistic and more equitable in its overall operation than random judicial "fact" fiats that treat one student one way and another virtually identically circumstanced student another. By differentiating between grade and high schools on the one hand and colleges on the other, we bring to academic regulation of hair style as much order as the inherent vagaries of a system of judge-make law will permit.

■ Basic also to today's decision is the premise that the state has no total right to regulate hair styles, either in general or within the entire framework of public education. There comes a time when its interest in teaching hygiene, instilling discipline, asserting authority and compelling uniformity all become so tenuous as to no longer be reasonably related to, nor effectively fostered by, a haircut regulation.

■ There are a number of factors which support the proposition that the point between high school and college is the place where the line should be drawn —the place where "the Law stops and just people starts".[2] That place is the point in the student's process of maturity where he usually comes within the ambit of the Twenty-Sixth Amendment and the Selective Service Act, where he often leaves home for dormitory life, and where the educational institution

2.  W. Faulkner, *The Reivers*.

ceases to deal with him through parents and guardians. From that day hence, only the presence of an unusual set of factors can justify regulating the length of his hair as a condition precedent to his right to continue to avail himself of public educational opportunities. There may be an extraordinary case where facts really could be produced to demonstrate that hair fetishes had become so distracting as to prevent collegiate scholastics from the normal pursuit of their learning. If it occurs and can be demonstrated, a different result would be warranted.

Today's decision should not be read as modifying the rationale of the majority opinion in *Karr*. *Karr* unqualifiedly includes the right of citizens to choose their mode of personal hair grooming within the great host of liberties protected by the Fourteenth Amendment from arbitrary state action. *Karr* nevertheless concludes that the regulation of that right by high school officials charged with the important state objective of educating young people does not lack a rational basis in a high school setting and therefore does not deprive such students of due process of law.[3]

■■ Thus, while we reaffirm that *Karr* is premised on an adjudication that the right of students to go into the world as they please is a constitutionally protected one, *Karr* is misinterpreted if it be read as providing that such a right is statically absolute throughout every educational experience. Of course it is not. Rather, like the measurement of time and space and like the even more explicit guarantees of the First Amendment, it must be relative. It functions in a variable equation, both with the

need of the institution to regulate that right and with the maturity of the student involved.[4] What is emphasized in today's decision is that the extent to which it is reasonable to invade personal liberty by the adoption of a haircut regulation changes with true variations between educational situations and types of students. For example, a post-graduate college or adult education classroom is not the same as a kindergarten or a 9th grade homeroom, just as certainly as the 24-year-old post-grad is twice the age of the 12-year-old sixth grader. The motives and motivations of each are entirely different. Today the court affirms that the adult's constitutional right to wear his hair as he chooses supersedes the State's right to intrude.[5] The place where the line of permissible hair style regulation is drawn is between the high school door and the college gate.

■ If we reviewed the fact findings made by the district judge in the case at bar, we would find them to be free from clear error. But such a procedure would suffer from the same deficit I perceive in all other such "fact" adjudications as to this type regulation. If the "facts" on both sides have been adequately developed, a decision either way would doubtless have to be affirmed under this standard of review. Fed.R.Civ.P. 52(a). Such variance in result is precisely what the rule of law we apply seeks to end. To avoid the erratic ad hoc results which either the varying abilities of individual parties to produce "proof" or the predilections of different district judges could impose on students and school officials otherwise similarly situated, the majority holds today that as a matter of law the college campus is the

3. In acknowledging the strong dissent of the other judges who, as I, joined in Karr v. Schmidt, I feel compelled to note that I feel securely bolstered in my interpretation of that case by the joinder in this opinion of Judge Morgan, who was its author. In further response to the dissent's suggestion that this opinion is a *coup de main*, I would only observe that if *Karr* had been intended as a *coup de*

*grace* to the very existence of a person's constitutional right to choose his hair style, it wasted a great deal of judicial power in firing so simple a shot.

4. *Cf.* Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed. 2d 768 (Part II).

5. See *Karr, n.* 13.

line of demarcation where the weight of the student's maturity, as compared with the institution's modified role in his education, tips the scales in favor of the individual and marks the boundary of the area within which a student's hirsute adornment becomes constitutionally irrelevant to the pursuit of educational activities.

■ In the absence of a showing that unusual conditions exist, the regulation of the length or style of a college student's hair is irrelevant to any legitimate college administrative interests and any such regulation creates an arbitrary classification of college students. Because no such unusual circumstances existed here, the regulation adopted in the instant case violates both the due process and equal protection provisions of the Fourteenth Amendment to the Constitution of the United States. The decision of the district court permanently enjoining the enforcement of a haircut regulation by Tyler Junior College is

Affirmed.

JOHN R. BROWN, Chief Judge (concurring):

I concur in the result and in much of Judge Clark's able opinion. I would join also in Judge Wisdom's concurrence and all of that of Judge Simpson's save where he embraces completely Judge Tuttle's concurrence in Sherling v. Townley, 5 Cir., 1972, 464 F.2d 587 which, to me, in a reverse way is subject to the same deficiency as *Karr* with its *per se* rule—one for, one against hair restrictions.

I think Judge Clark for the Court has bravely revealed the shortcomings of our vaunted case-and-controversy system with its insatiable demand for record facts. As he wisely points out, when all is said and done, these decisions· do not —and it would be a dangerous thing if they did—turn on the presence or absence of word testimony from administrators, school boards, freedom militants or variations in between as to the consequences in order, discipline, learning environment and the like flowing from the cosmetic factor of hair. For this testimony—pro and con—is freely available with none of the restraints of perjury, and in the last analysis the Judge picks and chooses, not because one is more, or less, creditable than the other, but simply because the one rather than the other comes closest to the Judge's notion of what the law demands or tolerates.

Indeed, except for one limited dissent in *Karr*, the position of the majority was not on the factual record. It was on the idea that the state could regulate, with no indicated justification, the length of hair.

This is no apologia for the system. It is a recognition of fact. And for a calling already full of its own myths and the expectation that our Commission somehow invests us with a prescience given to no other men, it is good for us to acknowledge our limitations and the occasional inadequacy of our system to honestly articulate the distinctions in judgment.

My slight difference is that while recognizing these influences leading Judges to decision, it seems a contradiction to cast it in terms of *per se*. For by sheer numbers, that is to aggregate the individualized judicial hunches into something that, genie-like, is a principle of law. See Hutcheson, The Judgment Intuitive: The Function of the "Hunch" in Judicial Decisions, 1929, 14 Corn.L. Q. 274. Except for this I concur in the opinion and certainly the result.

WISDOM, Circuit Judge, with whom Chief Judge JOHN R. BROWN and GOLDBERG and THORNBERRY, Circuit Judges, join specially concurring:

I concur in the result of this case because of the reasons I expressed in my dissenting opinion in Karr v. Schmidt, 5 Cir. 1972 (en banc) 460 F.2d 609.

BELL, Circuit Judge (specially concurring):

I concur in the result of this case and in the principle which it sets out that is applicable to hair style regulations at

the college level, a principle different from that applying below the college level. See Karr v. Schmidt, 5 Cir., 1972, 460 F.2d 609 (En banc). A legislative judgment of the kind involved here is inescapable for the court, given civil rights jurisdiction, 42 U.S.C.A. § 1983, the inability to require exhaustion of state remedies, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and the class action rule, Rule 23, F.R. Civ.Procedure.

GODBOLD, Circuit Judge, with whom THORNBERRY, Circuit Judge, joins, specially concurring:

I concur in the result of this case and in the principle which it sets out that is applicable to hair style regulations at the college level, a principle different from that applying below the college level. In Karr v. Schmidt, 460 F.2d 609 (5th Cir. 1972) (en banc), I expressed my view regarding the correct governing principle for hair and dress code regulations below the college level. I continue to adhere to that view.

SIMPSON, Circuit Judge, with whom WISDOM and GOLDBERG, Circuit Judges, join in whole and Chief Judge JOHN R. BROWN joins in part, concurring specially:

I concur in the result here reached by the Court for the cogent reasons expressed by Judge Wisdom in his dissent (which I joined) in Karr v. Schmidt, 5 Cir. 1972 en banc, 460 F.2d 609 and further for the reasons recently well-stated by Judge Tuttle in his special concurrence in Sherling, a minor, etc. et al., v. Townley, Individually and as Superintendent of the Irving Independent School District, et al., 5 Cir. 1972, 464 F.2d 587.

I have as much difficulty as does Judge Dyer (see separate dissent, p. 13) in reconciling this decision with Karr v. Schmidt. I agree with him that the majority opinion here makes "constitutional consequences dependent upon a line arbitrarily drawn between high schools and junior colleges."

I think the constitutionally protected right of a 17 year old junior college freshman with respect to his choice of hair length may not be logically demonstrated to differ from that of a 17 or 18 year old high school junior or senior. To me this false dichotomy simply emphasizes the inherent fallacy of the majority position in Karr v. Schmidt. I would not, as would Judge Dyer, follow Karr v. Schmidt. I would repudiate it, and instead, as suggested by Judge Tuttle in Sherling v. Townley, supra, adopt "a *per se* rule that no such regulation" (of hair length) "can stand under the equal protection provisions of the Fourteenth Amendment on the ground that such regulations create a classification of citizens totally unrelated to the objectives of the operation of high schools." [1]

This Court en banc strained mightily and conscientiously over these two cases. The net result of the effort is unfortunately not a glorious one. Our stance as a court emerges as unsatisfactory—because it is arbitrary and inconsistent—to members of the Court with directly opposing views. Surely these are grounds for re-examination of both decisions.

DYER, Circuit Judge, with whom GEWIN, COLEMAN, AINSWORTH and INGRAHAM, Circuit Judges, join, dissenting:

I dissent from the Court's conclusion that Lansdale has a Fourteenth Amendment right to wear his hair as long as he pleases, in violation of the College's "Dress Code." It has no authoritative support and, in my opinion, is contrary to the rationale of Karr v. Schmidt, 5 Cir. 1972, 460 F.2d 609, en banc.

In *Karr* we said no less than five times that a substantial constitutional question was not presented in a haircut case.

Believing, as did Mr. Justice Black, that appellee Karr's asserted right to

---

1. And of course, junior and senior colleges and universities as well.

be free of school regulations governing the length of his hair is one that is not cognizable in federal courts, we reverse with direction that the case be dismissed for failure to state a claim for which relief can be granted.

*Id.* at 611.

Is there a constitutionally protected right to wear one's hair in a public high school in the length and style that suits the wearer? We hold that no such right is to be found within the plain meaning of the Constitution.

*Id.* at 613.

It is our firm belief that this asserted freedom [to wear hair in school at the length that suits the student] does not rise to the level of fundamental significance which would warrant our recognition of such a substantive constitutional right.

*Id.* at 615.

* * * [O]ur holding [is] that there is no substantial constitutional right to wear hair in the fashion that suits the wearer * * *.

*Id.* at 616.

[Our decision] reflects recognition of the inescapable fact that neither the Constitution nor the federal judiciary it created were conceived to be keepers of the national conscience in every matter great and small.

*Id.* at 618.

What we said in *Karr* is equally applicable here. "By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not *directly and sharply implicate basic constitutional values*" (emphasis supplied) Epperson v. Arkansas, 1968, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228.

The Court is attempting to make law by a *coup de main* that articulates constitutional consequences dependent upon a line arbitrarily drawn between high schools and junior colleges in the face of contrary precedent.

RONEY, Circuit Judge (dissenting):

I dissent, first, because I see no distinction between high schools and junior colleges under the Karr v. Schmidt holding, which is now the law of this Circuit; and second, because I agree with the Karr v. Schmidt rationale except where school attendance is compelled by the state, which is not the case at Tyler Junior College.

ON PETITION FOR REHEARING

PER CURIAM:

It is ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied.

DYER, Circuit Judge (dissenting):

For the reasons stated in my dissenting opinion I dissent from the denial of the petition for rehearing.

GEWIN, COLEMAN, AINSWORTH and RONEY, Circuit Judges (dissenting):

For the reasons stated in the dissenting opinion of Judge Dyer, we respectfully dissent from the denial of the petition for rehearing.