812 F.2d 1365
 Allen J. DeWEESE, Plaintiff-Appellant,
v.
TOWN OF PALM BEACH, a Florida Municipal Corporation, Joseph
Terlizzese, Chief of Police, George Mathews, Charles
Warwick, Thomas Mettler, Walter Rathbun, Robert Grace,
Caldwell Robinson, and Paul Ilyinsky, individually and in
their capacities as present or former members of Town
Council of the Town of Palm Beach, Florida, Defendants-Appellees.
 No. 85-5342.
 United States Court of Appeals,
Eleventh Circuit.
 March 23, 1987.
 
 James K. Green, Green, Eisenberg & Cohen, West Palm Beach, Fla., M. David Gelfand, Tulane Law School, New Orleans, La., for plaintiff-appellant.
 H. Adams Weaver, West Palm Beach, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before JOHNSON and ANDERSON, Circuit Judges, and GARZA*, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 An Ordinance of the Town of Palm Beach ("Town") prohibits its citizens from appearing downtown without a garment covering the upper portion of their bodies. Because this prohibition, as applied to appellant DeWeese, is not rationally related to any legitimate Town interest, we hold that the ordinance is unconstitutional.
 
 I. BACKGROUND
 
 2
 Appellant Allen DeWeese is a male lawyer who lives in the Town of Palm Beach, Florida. He likes to run, and during the hot, humid Florida summers he runs without a shirt on. This activity offended the town fathers of Palm Beach so they passed a law against it, Ordinance 21-48.[1]
 
 
 3
 DeWeese was stopped by a police officer and charged with violating the first ordinance for running on a public jogging trail without a shirt. Prior to his trial as a criminal defendant, DeWeese sought to have the charges against him dismissed on various constitutional grounds. A Palm Beach County judge granted DeWeese's motion to dismiss and declared the ordinance unconstitutional.
 
 
 4
 The Town appealed and a state appellate court remanded for further evidentiary hearings before the trial court. The Town then presented testimony that Ordinance 21-48 was designed, pursuant to the Town's goals as set forth in its Comprehensive Plan, to preserve the Town's tradition, heritage and quality of life and to maintain stable land use and property values. A different state trial judge again declared the statute unconstitutional.
 
 
 5
 The Town appealed this decision as well, but voluntarily dismissed its appeal. It agreed that the statute was fatally vague and overbroad and instead sought to remedy the perceived flaws in the first ordinance by enacting a second law, Ordinance 2-81.[2] It is Ordinance 2-81 which is at issue in this case.
 
 
 6
 Appellant DeWeese immediately brought an action in federal district court pursuant to 42 U.S.C. Sec. 1983. He alleged that the revised ordinance deprived him of rights secured by the First, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution. As a basis for this allegation, DeWeese stated that he continued to run topless within the Town limits on public property more than 150 feet from the beach and that he feared prosecution for engaging in such conduct. He sought declaratory relief adjudging the revised ordinance unconstitutional.
 
 
 7
 The district court initially granted summary judgment in favor of DeWeese, reasoning that the state court's earlier determination that the first ordinance was unconstitutional collaterally estopped the Town from relitigating the same constitutional issues with respect to the revised ordinance. A panel of this court reversed. See DeWeese v. Town of Palm Beach, 688 F.2d 731 (11th Cir.1982). We held that the district court had "abused its discretion by applying [offensive] collateral estoppel," and remanded "to allow the Town to expend more of its resources in an attempt to prove that this most unusual statute is constitutional." Id. at 732.
 
 
 8
 Following cross-motions for summary judgment, the district court determined that the ordinance was, in fact, constitutional. DeWeese v. Town of Palm Beach, 616 F.Supp. 971 (S.D.Fla.1985). DeWeese now appeals from that decision.[3]
 
 
 9
 On appeal, DeWeese argues that the ordinance is an unconstitutional exercise of Palm Beach's police power because it is not rationally related to the public health, safety, welfare, or other legitimate legislative goal.
 
 
 10
 Because we agree that the Town's ordinance is not rationally related to any legitimate interest, we reverse the district court.[4]II. DISCUSSION
 
 
 11
 The Town argues that the federal courts have no business meddling in the Town's attempt to regulate the dress of its citizens. Translating this contention into legal language, the Town's contention is that there is no liberty interest in matters of personal dress, protected by the Due Process Clause of the Fourteenth Amendment. It is true that the Supreme Court cases offer little guidance on this issue; Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), assumed for purposes of that decision, but did not decide, that there was such a liberty interest. However, the issue is not an open question in this circuit; the law of this circuit plainly recognizes that the right of a citizen to choose his mode of personal hair grooming is "within the great host of liberties protected by the Fourteenth Amendment from arbitrary state action." Lansdale v. Tyler Junior College, 470 F.2d 659, 663 (5th Cir.1972) (en banc), cert. denied, 411 U.S. 986, 93 S.Ct. 2268, 36 L.Ed.2d 964 (1973).[5] Under Lansdale, we think it is clear that the corresponding liberty interest in personal dress is similarly protected.
 
 
 12
 The law of this circuit is also clear that the Town's ordinance is presumptively valid, that it is to be tested pursuant to the rational basis test, and that DeWeese has the burden of establishing that the ordinance is arbitrary and irrational. Lansdale, 470 F.2d at 662-63; Karr v. Schmidt, 460 F.2d 609, 616-17 (5th Cir.), cert. denied, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972).
 
 
 13
 In assessing whether or not DeWeese has carried his burden, we begin with the reasons for the ordinance as asserted by the Town. The Town asserts that the ordinance was designed (1) to stabilize its land values and maintain its role as a residential community; and (2) to maintain the history, tradition, identity and quality of life of the Town.
 
 
 14
 The Town has acknowledged that its regulation has only a minimal effect on property values. The Town has not suggested how a few[6] male, shirtless joggers would adversely affect real estate values, and our most creative imagination cannot conjure up any rational way. Similarly, the Town has not indicated how it will help preserve the residential nature of the Town to require men to wear a shirt while jogging. Nor can we divine any rational way. We conclude that there is no reasonable relation between the instant ordinance and land values or the residential nature of the Town.
 
 
 15
 We next address the remaining articulations of the Town's interests: maintaining the Town's identity, history, tradition, and quality of life. The record on appeal, however, suggests no history or tradition requiring men to wear a shirt when toplessness is appropriate to the physical activity being undertaken. Nor does the record suggest any other relationship between the ordinance and the Town's history, tradition, identity or quality of life. Other than an interest in the personal dress of its citizens--and we will address below the Town's interest in fashion--we can imagine no reasonable relationship between shirtless jogging by males and the Town's history, tradition, identity, or quality of life.[7]
 
 
 16
 After careful study and thought, we conclude that the Town's assertions of generalized interests in history, tradition, identity, and quality of life are in truth a mere circumlocution for enforcing the town fathers' view of the proper fashion for personal dress[8] in Palm Beach.[9]
 
 
 17
 In some contexts, a state has legitimate interests in regulating personal dress or personal appearance. For example, the Supreme Court in Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), sustained hair grooming regulations applicable in a police department. Pointing to the need to make police officers readily recognizable to the public, the interest in promoting the esprit de corps of the police force, and the fact that the overwhelming majority of police forces are uniformed, the Court held that the regulations were neither irrational nor arbitrary. In Karr v. Schmidt, 460 F.2d at 617, the former Fifth Circuit held that a high school's hair grooming regulations were rationally related to the school's legitimate interests in discipline, avoiding distractions, and health and safety interests. But see Lansdale v. Tyler Junior College, 470 F.2d at 663 (holding that at the college level such interests are not sufficient to warrant a similar intrusion on the liberty interests of college students). Other courts have sustained dress regulations in similar contexts. For example, in Miller v. School District No. 167, 495 F.2d 658 (7th Cir.1974), the Seventh Circuit found no constitutional violation when a teacher was terminated for noncompliance with beard and sideburn regulations.
 
 
 18
 On the other hand, we have found no case that sustained, or even addressed, the authority of a state or municipality to regulate the dress of its citizens at large. However, there is dicta in several cases suggesting that a state has no legitimate interest in the personal dress of its citizens at large. For example, in Miller v. School District No. 167, 495 F.2d at 664-65, nn. 25 & 26, then Judge, now Justice, Stevens, commented that some restrictions might be so extreme that they would readily be condemned as unconstitutional, and cited in nn. 25 & 26 the following examples:
 
 
 19
 We do not have a case in which the sovereign insists that every citizen must wear a brown shirt to demonstrate his patriotism. Fortunately, intervention of the federal judiciary has not been required during the brief history of our Republic in order to avoid intolerable instances of required conformity like that following the Manchus' invasion of China in 1644, or the official prohibition of beards during the reign of Peter the Great. See Crews v. Cloncs, ... 432 F.2d [1259], 1264, n. 7 [ (7th Cir.1970) ].
 
 
 20
 Consider Judge Cooley's comment on Justice Field's opinion in Ho Ah Kow [v. Nunan, 12 F.Cas. 252 (No. 6,546) (C.C.D.Cal.1879) ], in which he stated in part:"There is and can be no authority in the state to punish as criminal such practices or fashions as are indifferent in themselves, and the observance of which does not prejudice the community or interfere with the proper liberty of any of its members. No better illustration of one's rightful liberty in this regard can be given than the fashion of wearing the hair. If the wearing of a queue can be made unlawful, so may be the wearing of curls by a lady or of a mustache by a beau, and the state may, at its discretion, fix a standard of hair-dressing to which all shall conform. The conclusive answer to any such legislation is, that it meddles with what is no concern of the state, and therefore invades private right." 18 Am.Law Reg. 685, also quoted in the margin of 12 Fed.Cas. at 254.
 
 
 21
 The foregoing would suggest that the town fathers' distaste for the personal dress of DeWeese, a citizen at large, as he jogs the Town's streets is simply not a legitimate governmental interest. While that may be true, our decision in this case need not be quite so broad. We hold only that the Town's interest in regulating the dress of its citizens at large, in the form of prohibiting male joggers from appearing in public without a shirt, is so manifestly weak that it cannot justify the intrusion upon DeWeese's liberty interest in his chosen mode of dress.
 
 
 22
 Our conclusion that the Town's restrictions on dress are irrational and arbitrary finds support in the fact that such restrictions are rare indeed. DeWeese has asserted, without contradiction by the Town, that the instant regulation is unique. Our own research has uncovered no case in any state sustaining such a law or even challenging one. We have been able to find a few similar laws only in humorous collections of obscure and moribund laws. See Hyman, The Trenton Pickle Ordinance and Other Bonehead Legislation (1976); Seuling, You Can't Eat Peanuts in Church and Other Little Known Laws (1975).[10] In assessing rationality in analogous contexts, courts consider the existence and prevalence of other similar laws. See Kelley v. Johnson, 425 U.S. at 248, 96 S.Ct. at 1446; cf. Bowers v. Hardwick, --- U.S. ----, 106 S.Ct. 2841, 2844-46, 92 L.Ed.2d 140 (1986). The virtual absence of statutes or ordinances similar to the instant one, although not controlling, is a strong suggestion that the ordinance is arbitrary and irrational.
 
 
 23
 The instant restrictions cannot be distinguished satisfactorily from a regulation requiring all citizens when appearing in public to wear a brown shirt, see Miller v. School District No. 167, 495 F.2d at 665 n. 25, or from a regulation prohibiting women from appearing in public in slacks or with bare calves or dresses above the knee, or from a regulation requiring all men appearing in public after sundown to wear a black tie and tails. We are satisfied that such intrusions on the liberty interests of citizens at large would not pass constitutional muster, absent identification of some rational basis[11] which has not yet been brought to our attention and which is beyond our present imagination.
 
 
 24
 Finally, our conclusion is supported, and possibly mandated, by Lansdale v. Tyler Junior College. There, the Former Fifth Circuit determined that Tyler Junior College's legitimate interests in discipline, etc. were not sufficient to justify regulations prescribing the length of hair for adult college students. It seems clear to us that the legitimate interests of Tyler Junior College were significantly greater than the Town's interest in this case in fostering the preferences of the town fathers with respect to personal dress fashions. If the hair regulation at issue in Lansdale was not rational, we are confident that it is not rational for Palm Beach to restrict the clothing choice and personal appearance of its citizen at large, DeWeese.[12]
 
 
 25
 For the foregoing reasons, we conclude that Palm Beach Ordinance 2-81 is unconstitutional. The judgment of the district court is
 
 
 26
 REVERSED.
 
 APPENDIX
 ORDINANCE NO. 2-81
 
 27
 AN ORDINANCE OF THE TOWN OF PALM BEACH, PALM BEACH COUNTY, FLORIDA, AMENDING CHAPTER 21 OF THE CODE OF ORDINANCES, TOWN OF PALM BEACH, ENTITLED "OFFENSES AND MISCELLANEOUS PROVISIONS", SO AS TO AMEND SECTION 21-48 THEREOF, "REGULATIONS REGARDING DRESS"; REPEALING ORDINANCE NO. 4-79 OF THE TOWN OF PALM BEACH; AND SUBSTITUTING THIS ORDINANCE THEREFOR: PROVIDING A PENALTY FOR VIOLATION HEREOF; REPEALING ALL ORDINANCES OR PARTS OF ORDINANCES IN CONFLICT HEREWITH; AND PROVIDING FOR AN EFFECTIVE DATE.
 
 
 28
 WHEREAS, the State of Florida by enacting Chapter 163 of the Florida Statutes has mandated that each municipality within the State of Florida assess its goals, priorities and needs in order to preserve and enhance present qualities, overcome present handicaps and prevent or minimize future problems by adopting a Comprehensive Plan; and
 
 
 29
 WHEREAS, Section 163.165 sets forth that the legislative intent and the provisions of the Local Government Comprehensive Planning Act in its interpretation and application are declared to be the enactment of minimum requirements necessary to promote, protect and improve the public health, safety, comfort, good order, appearance, convenience, morals and general welfare; to conserve the value of land, buildings and resources; and to protect the character and maintain the stability of residential, agricultural, business and industrial areas and to promote the orderly development of such areas; and
 
 
 30
 WHEREAS, the Town of Palm Beach in compliance with the mandate of the State of Florida did enact this Comprehensive Plan in the form of Ordinance No. 13-79 of the Town of Palm Beach, Florida, enacted September 25, 1979, with its required objectives stated, in part, to be: "To maintain the quality of life which has given the Town its unique, physical and historic character and, towards its objective to take all legally and technically available measures to stabilize the Town's land use ... and further to maintain the Town's identity and quality of life by maintaining the Town's unique physical and historical character with emphasis on visual qualities associated with the sub-tropical water-oriented environment and to maintain the role of the Town as a predominantly residential community adding only the type and amount of business and other support services to provide for the needs of the Town's residents and their visitors ..."; and
 
 
 31
 WHEREAS, the Town of Palm Beach has received the advice of its planning consultants and experts on maintaining land values and said experts have advised the Town of Palm Beach that because of its unique character and history it is in the interest of the public health, safety and welfare of the citizens of the Town of Palm Beach and its visitors, in order to meet and maintain the goals of the Town's Comprehensive Plan, to, in concert with other regulations and ordinances, minimally regulate the attire of citizens and visitors within certain limited and defined areas in the Town of Palm Beach; and
 
 
 32
 WHEREAS, the purpose and intent of the Town of Palm Beach in enacting certain minimal regulations regarding the attire of citizens and visitors is solely related to the Town's attempt to maintain the quality of life within the community and preserve the Town's unique historical and physical character and is not intended for the purpose of attempting to define or impose any moral code on individuals or otherwise impair or restrict individual rights not otherwise governed by the general law;
 
 
 33
 NOW, THEREFORE,
 
 
 34
 BE IT ORDAINED BY THE TOWN COUNCIL OF THE TOWN OF PALM BEACH, PALM BEACH COUNTY, FLORIDA, as follows:
 
 
 35
 Section 1: Section 21-48 of the Code of Ordinances, Town of Palm Beach, is hereby repealed and this Ordinance shall serve in its place and stead.
 
 
 36
 Section 2: It shall be unlawful for any person to appear in any public place in the Town of Palm Beach without the upper part of his or her body covered. This section shall not apply to private property or public bathing beaches and the immediate vicinity of public bathing beaches.
 
 
 37
 Section 3: A person engaged in recreational activities in public places and facilities in the Town of Palm Beach, where such recreational activities are otherwise permitted and which are not areas excluded from the operation of this Ordinance by Section 2, shall have the upper part of his or her body covered in clothing appropriate to and characteristic of the recreational activity being undertaken; however, the choice and style of such clothing shall be at the complete option of the individual but such clothing shall always consist of some garment. Such recreational activities and places shall include, but not be limited to:
 
 
 38
 a. Golf on public golf courses.
 
 
 39
 b. Tennis on public tennis courts.
 
 
 40
 c. Walking, bicycling, jogging, running, skating or skateboarding on Town facilities or rights-of-way where such activity is not otherwise prohibited.
 
 
 41
 Section 4: Definitions: As contained in this Ordinance the following definitions shall apply:
 
 
 42
 a. "Upper part of his or her body covered" shall mean clothed above the waist in dress characteristic to the activity being undertaken by the individual at any particular time. There are no activities for which some dress above the waist is not required.
 
 
 43
 b. "Vicinity of public bathing beaches" shall mean within 150 feet of an ocean beach.
 
 
 44
 c. "Beach", as used in this Ordinance, shall mean the landward most portion of the sandy area adjacent to the Atlantic Ocean.
 
 
 45
 d. "Garment" shall mean an article of clothing.
 
 
 46
 e. "Person" or "individual" shall mean a male or female, 14 years of age or older.
 
 
 47
 Section 5: Penalties: Any person who shall violate any of the terms, provisions or conditions of this Ordinance shall, upon conviction thereof, be punished by a fine as provided by general law for the violation of municipal ordinances but shall not be subject to imprisonment.
 
 
 48
 Section 6: If any provision, section, paragraph, sentence or phrase in this Ordinance shall for any reason be found to be invalid or inoperative, or shall be held by any court to be unconstitutional, the remainder of the provisions of this Ordinance shall, nevertheless, continue in full force and effect.
 
 
 49
 Section 7: That all ordinances or parts of ordinances in conflict herewith be and the same are hereby repealed.
 
 
 50
 Section 8: That this Ordinance shall take effect immediately upon its passage and approval, as provided by law.
 
 
 
 *
 Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 "It shall be unlawful for any person to walk, run, jog, ride or otherwise be conveyed over or upon any street, alley, sidewalk, roadway, thoroughfare or other public place in the Town of Palm Beach with the upper part of his or her body uncovered. This Section shall apply to all places within the Town except private residences and the appurtenant grounds, public bathing beaches, except that females may not wear or appear in topless bathing suits or similar outfits on any public or private beach or in any public place within the Town." Palm Beach, Florida Ordinance 21-48 (1979) (repealed 1981)
 
 
 [2]
 For the full text of Ordinance 2-81, see Appendix
 
 
 [3]
 We have jurisdiction over this continuing case or controversy because DeWeese has stated a credible threat that he might be arrested or charged. DeWeese, 688 F.2d at 733 n. 1
 
 
 [4]
 DeWeese contends that there are several other grounds which would suffice to invalidate the ordinance: (1) He argues that his right to choose his own clothing is a fundamental right. However, that argument is foreclosed by Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), and Karr v. Schmidt, 460 F.2d 609 (5th Cir.), cert. denied, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972). (2) DeWeese also argues that the ordinance infringes upon his First Amendment right to freedom of expression. He argues that his shirtless jogging communicates his philosophy about health, fitness and the human body as an artistic medium. Similarly, binding precedent in this Circuit establishes that such conduct has no First Amendment protection. South Florida Free Beaches, Inc. v. City of Miami, 734 F.2d 608, 610-11 (11th Cir.1984); Karr v. Schmidt, 460 F.2d at 613. (3) DeWeese argues that an intervening Supreme Court decision renders incorrect our prior determination that the State was not collaterally estopped by the prior state court judgment. This argument is without merit and merits no discussion. This court's previous decision on the collateral estoppel issue remains the law of the case. (4) Finally, DeWeese asserts that the instant ordinance is unconstitutionally vague and overbroad and violates his equal protection rights. In light of our disposition of this case, we do not address these two grounds
 
 
 [5]
 This case was decided prior to the close of business on September 30, 1981, and is binding precedent under Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981)
 
 
 [6]
 There is no suggestion that shirtless runners are so numerous as to constitute a nuisance or any other disturbance. Common sense suggests that the traffic problems and sidewalk space problems caused by a great number of joggers far outweigh the problem inherent in the town fathers' personal distaste for bare backs. But this regulation is not focused on numerosity--e.g., it does not bar jogging in downtown or other congested areas. Similarly, there is no assertion that shirtless jogging is an offensive and intrusive act akin to broadcasting through a bull horn. See Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). Unlike the bull horn case, those who find DeWeese's dress distasteful have but to avert their eyes. See Cohen v. California, 403 U.S. 15, 21-22, 91 S.Ct. 1780, 1786-1787, 29 L.Ed.2d 284 (1971)
 
 
 [7]
 The Town has not asserted that morality has any relation to the instant ordinance. Indeed, the preamble to the ordinance expressly disclaims any such assertion. The ordinance "is not intended for the purpose of attempting to define or impose any moral code on individuals." The district court so found: "This ordinance does not regulate lewdness or indecent exposure." 616 F.Supp. at 981. Nor could there be any reasonable reliance upon an interest in morality when the same ordinance permits exposure of the male torso in public on the beaches. Thus we conclude that the instant ordinance cannot be sustained as applied to male joggers by reliance upon some moral interest
 
 
 [8]
 The preamble to the ordinance acknowledges the intent to enact "certain minimal regulations regarding the attire of citizens and visitors."
 
 
 [9]
 In searching our imagination for other potential "interests" which the Town may have had--although we expressly do not assume it did--we can provide no support or comfort for the Town's position. Palm Beach has an image of cultured sophistication and affluence. There may be some stereotypical conception that persons of "lower" socio-economic class more commonly appear in public without shirts. However, we are satisfied that any interest in perpetuating the personal dress fashions of the elite would fare no better than the general interest in fashion which we address in text. The same would be true of any distinction between personal dress fashions which might appeal to "old money" as compared to the nouveau riche for whom health and fitness might be more important
 
 
 [10]
 For example, it appears that Toomsboro, Georgia, also requires men to wear shirts in town. Similarly, Pritchard, Arizona, requires men to wear tops to their bathing suits while swimming. Alton, Illinois, forbids women to wear slacks, while Nogalez, Arizona, forbids anyone from wearing suspenders. In California, women cannot wear housecoats while driving. In Carmel, New York, men may only wear trousers and a coat which match
 
 
 [11]
 The Town relies on several cases which have acknowledged as legitimate a municipality's aesthetic interest in regulating highway signs, building facades, and other zoning matters. See e.g., Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). We believe that such cases are not applicable to the instant situation. First, the instant restriction operates directly upon an individual's conduct, i.e., his personal dress, rather than regulating the use to which he can put his property. Second, such zoning ordinances are commonplace, suggesting the rationality thereof. By contrast, the instant ordinance is unique; the absence of similar attempts to regulate the personal dress of citizens at large suggests that this ordinance is arbitrary. Finally, the Town's interest in imposing upon its citizens the preferences of the town fathers with respect to personal dress fashions is manifestly weak, whereas there are longstanding and significant governmental interests in the zoning context: e.g., with respect to the regulation of highway signs, the reality and significance of visual clutter is well documented, and the government's aesthetic interest is triggered. Members of City Council v. Taxpayers for Vincent, supra; Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981)
 
 
 [12]
 We acknowledge that the intrusion on the liberty interest of the college students in Lansdale might be deemed more permanent; the length of a student's hair was dictated by the regulation for several years of college, whereas DeWeese can continue to jog shirtless so long as he confines himself to the beach area. Although the intrusion on liberty in Lansdale might be somewhat greater, any difference is more than offset by the fact that the governmental interest to be served in this case is significantly weaker than that in Lansdale