Allen J. DeWEESE, Plaintiff,

v.

TOWN OF PALM BEACH, a Florida Municipal Corporation; Joseph Terlizzese, Chief of Police for Town of Palm Beach, Florida; George Mathews, Charles Warwick, Thomas Mettler, Walter Rathbun, Robert Grace, Caldwell Robinson, Paul Ilyinsky, individually and in their capacities as present or former members of the Town Council of the Town of Palm Beach, Florida, Defendants.

No. 81–8072–Civ.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

March 30, 1985.

972

James K. Green, Green, Eisenberg & Cohen, West Palm Beach, Fla., for plaintiff.

H. Adams Weaver, Johnston, Sasser, Randolph & Weaver, West Palm Beach, Fla., for defendants.

## ORDER

ROETTGER, District Judge.

This case could appropriately be titled—with apologies to Neil Simon—Bareback in the Park. Essentially, it involves an as-

sault by Plaintiff, a lawyer, upon the Town of Palm Beach's ordinance which proscribes running or jogging without a shirt, or top, except on the beach or private property. Plaintiff assails this as violating his first amendment rights, as well as on other bases.

The case has had an extremely complicated procedural background and, if one looks for an aggravating cause of court congestion, this case could be a splendid illustration.

## PROCEDURAL BACKGROUND

On November 19, 1979, Allen J. DeWeese ("DeWeese"), an attorney, was stopped by a police officer and issued a Notice to Appear for Indecent Exposure—Lewdness for running on a public jogging and bicycle trail in the Town of Palm Beach (the "Town") clad in running shorts but with the upper part of his body uncovered.

DeWeese is an adult male resident of the Town of Palm Beach, a Florida municipal corporation located within the Southern District of Florida. DeWeese was verbally warned by the officer on numerous occasions, and was issued one prior written warning.

*State Court Proceedings* [1]

Prior to trial in state court under the first ordinance (Ordinance 21–48) as a criminal defendant, DeWeese filed a motion to dismiss on various constitutional grounds. After an evidentiary hearing, the Palm Beach County judge granted DeWeese's motion to dismiss and struck the ordinance as unconstitutional.

The Town appealed and the Appellate Court remanded so that the constitutionality of the ordinance could be considered at a further evidentiary hearing, which was held before a different Palm Beach County judge. The Town presented testimony that the first ordinance was an adjunct to other Town regulations which assisted in the preservation of the Town's tradition, heritage and quality of life pursuant to the

1. *Town of Palm Beach v. Allen DeWeese,* Case No. 79–10882 MO–A01, Palm Beach County Court.

Town's goals as set forth in its Comprehensive Plan. The state judge again declared the first ordinance unconstitutional.

The Town also appealed the second dismissal order, but voluntarily dismissed the appeal prior to argument, agreeing that the first ordinance was fatally vague and overbroad, and the Town did not have an "incentive to defend vigorously" by appealing the trial court's ruling on the ninth amendment. See *DeWeese v. Town of Palm Beach*, 688 F.2d 731, 734 (11th Cir.1982).

The Town subsequently enacted Ordinance No. 2–81 (referred to hereafter as "this ordinance") to amend and repeal the first ordinance.

*Federal Court Proceedings*

DeWeese ("Plaintiff") brought an action in this court under 42 U.S.C. § 1983, alleging that this ordinance constitutes a deprivation of rights secured to him by the first, fifth, eighth, ninth and fourteenth amendments to the United States Constitution. The spearhead of DeWeese's Complaint is that this ordinance violates his right to dress under the ninth and fourteenth amendments, and his right to health through athletic expression. Plaintiff seeks declaratory and injunctive relief, attorney's fees and costs.[2] DeWeese continues to run without a shirt in the Town on public property more than 150 feet from the beach, and alleges he fears prosecution, and asserts that this ordinance should be declared unconstitutional, or, alternatively, that Defendants should be barred from enforcing the ordinance. DeWeese named as Defendants in the instant suit the Town of Palm Beach, the chief of police, and members of the Town Council (both the members when second ordinance was adopted, as well as their successors.)

This court denied the Town's motion to dismiss for lack of subject matter jurisdiction, finding DeWeese stated "a credible threat that he might be arrested and charged", *Ellis v. Dyson*, 421 U.S. 426, 434, 95 S.Ct. 1691, 1696, 44 L.Ed.2d 275 (1975), to give rise to an actual case or controversy. On Plaintiff's motion for partial summary judgment, this court found DeWeese

entitled to judgment as a matter of law on the basis of collateral estoppel, and, declaring this ordinance unconstitutional, ruled that this jogger can "run barebacked in the park."

The Town appealed to the Eleventh Circuit Court of Appeals. The Court of Appeals affirmed the district court's finding of case or controversy, *DeWeese v. Town of Palm Beach*, 688 F.2d at 733 n. 1., but reversed and remanded the Final Judgment and the order granting summary judgment, holding the district court "abused its discretion by applying [offensive] collateral estoppel." *Id.* at 732. The Eleventh Circuit remanded with a curious comment: "to allow the Town to expend more of its resources in an attempt to prove that this most unusual statute is constitutional," and directed the district court on remand to "decide the merits of the constitutional question without giving collateral estoppel effect to the order of the state trial court." *Id.* at 732, 734.

This court, having heard argument on cross motions for summary judgment, finds as follows:

POLICE POWER

■ "In construing the validity of the ordinance in question, we must (1) assume that a valid ordinance was intended [and] (2) construe the ordinance to be legal, if possible to do so, and strive to so construe it as to give reasonable effect to its provisions." *City of Miami v. Kayfetz*, 92 So.2d 798, 801 (Fla.1957). Governments are given broad discretion in their internal affairs, "there being a peculiar propriety in permitting the inhabitants of a City through its proper officials to determine what rules are necessary for their own local government". *Id.* Therefore, in most instances, courts must refrain from interfering with the daily operation of a municipality to resolve conflicts which do not directly and sharply implicate constitutional values. See *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

**2.** A claim for an award of monetary damages was apparently withdrawn.

"Municipalities may enact laws in furtherance of the public health, safety and welfare, to the extent authorized by the states," and where a local government has the power to enact an ordinance, the legislative decision is presumptively constitutional. *Miami Herald Pub. Co. v. City of Hallandale*, 734 F.2d 666, 673 (11th Cir. 1984); *rev'd in part on other grounds*, 742 F.2d 590 (11th Cir.1984).

■ In considering whether or not the ordinance is reasonable, the test is not whether the decision of the Town Council appears unwise, but whether it is rationally related to the public health, morals, safety or general welfare and promotes a legitimate municipal objective. *Kayfetz*, 92 So.2d at 801. Plaintiff bears the burden to demonstrate that the challenged ordinance is so irrational that it serves no legitimate municipal interest. *Id.* at 802.

■ On September 25, 1979, the Town of Palm Beach, in compliance with chapter 163 of the Florida Statutes, enacted a Comprehensive Plan with its stated objectives as follows:

> To maintain the quality of life which has given the Town its unique physical and historic character and, towards its objective, to take all legally and technically available measures to stablize the Town's land use ... and further to maintain the Town's identity and quality of life by maintaining the Town's unique physical and historical character with emphasis on visual qualities associated with the subtropical water oriented environment and to maintain the role of the Town as a predominantly residential community adding only the type and amount of business and other support services to provide for the needs of the Town's residents and their visitors ...

PALM BEACH, FLA., CODE § 2–81 (1979). The Town Council received the advice of its planning consultants and experts on maintaining land values ... that because of its unique character and history it is in the interest of the public health, safety and welfare of the citizens of the Town of Palm Beach and its visitors, in order to meet and maintain the goals of the Town's Comprehensive Plan, to ... minimally regulate the attire of citizens and visitors within certain limited and defined areas in the town ... PALM BEACH, FLA., CODE § 2–81 (1979). The Town's stated interests are within the scope of authority delegated to the Town by the state and, therefore, the Town, under its police power, has the authority to enact reasonable dress regulations.

The first section of the ordinance in question, Section 3, requires a person engaged in recreational activities on public property not otherwise excluded to "have the upper part of his or her body covered in clothing appropriate to and characteristic of the recreational activity being undertaken." PALM BEACH, FLA., CODE § 2–81 (1979). Section 3(c) specifically includes jogging and running within this category of recreational activities. Section 2 excludes from regulation not only private property, but also public bathing beaches and the immediate vicinity of public bathing beaches. Section 4 defines "beach," "vicinity of public bathing beaches" and the phrase, "upper part of his or her body covered." Therefore, these words and phrases have a clear meaning when read in the context of the entire ordinance.

DeWeese has not met his burden to overcome the presumption that this ordinance is reasonable, nor does this court find any basis in the record to declare the ordinance unreasonable or otherwise invalid. For the reasons stated above, this court holds that this ordinance (the second ordinance) is a reasonable exercise of the police power insofar as it relates to DeWeese, in that the requirement that runners be clothed above the waist in certain prescribed areas of the Town bears a rational relationship to Palm Beach's general welfare.

It is necessary to consider each constitutional infringement alleged by Plaintiff to determine first, whether the Plaintiff may claim such liberty interest and, if so, whether the legislation survives the appropriate constitutional test.

RIGHT TO DRESS UNDER THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE [3]

"Since the days of the Founding Fathers the right to dress (though not necessarily to undress) as one pleases has been regarded as a basic, if seemingly trivial, form of personal liberty, one not even requiring explicit mention in the Constitution to be recognized." *South Florida Free Beaches, Inc. v. City of Miami, Florida*, 548 F.Supp. 53, 59–60 (S.D.Fla.1982).

*Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) is the principal Supreme Court opinion which addresses the issues whether there is a constitutional right to dress or liberty interest within the fourteenth amendment in matters of personal appearance, and, if so, to what extent a state subdivision may restrict that interest. *Kelley* distinguished the liberty interest in one's personal appearance, from the right to control one's own body, and concluded that the interest in personal appearance was less weighty than rights associated with procreation, marriage and family life protected under *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and its progeny. *Id.* 425 U.S. at 244, 96 S.Ct. at 1444.[4] The Supreme Court declined to decide whether there was some sort of liberty interest in matters of personal appearance noting that the Court's cases offer little, if any, guidance; however, the Court assumed such a right for purposes of deciding the case, but found that assumption insufficient to carry the challenger's claim. *Id.*

Similarly, this court assumes, for purposes of this decision, that there is a right to dress or liberty interest in matters of personal appearance, so that we may examine DeWeese's claim that the due process clause of the fourteenth amendment protects his choice to go bareback or topless.

■ The right to dress is not a fundamental right as it is neither explicitly nor implicitly protected under our Constitution. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 33, 93 S.Ct. 1278, 1296, 36 L.Ed.2d 16 (1973).[5] The courts have found fundamental rights in cases which incidentally involved matters of personal appearance but the fundamental right attached to the first amendment right to speech, *not* the right to dress. *See, e.g., Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Leonard v. City of Columbus*, 705 F.2d 1299 (11th Cir.1983).[6] However, as will be discussed subsequently, the liberty interest at stake in this case does not involve conduct entitled to first amendment protection.

■ As the right to dress is not fundamental, the heightened standard of strict scrutiny does not apply. Instead, DeWeese must demonstrate that the dress regulation imposed by the ordinance is so irrational

---

**3.** The court admits to some puzzlement as to the apparent inconsistency between "Palm Beach socks" (the cognoscenti know that means no socks) and running barebacked in the streets or through the park, with respect to the Town's "unique ... identity and quality of life."

**4.** DeWeese cannot challenge this ordinance as an infringement on his right to privacy under the ninth amendment because "one loses one's claim to privacy by acting in a place both public and in plain view of the public ... [as] the public interest may outweigh privacy on public lands." *South Florida Free Beaches, Inc. v. City of Miami, Florida*, 548 F.Supp. 53, 57 (S.D.Fla. 1982).

**5.** "[T]he key to discovering whether education is 'fundamental' is not to be found in comparisons of the relative societal significance of education as opposed to subsistence or housing. Nor is it to be found by weighing whether education is as important as the right to travel. Rather, the answer lies in assessing whether there is a right to education explicitly or implicitly guaranteed by the Constitution." *Rodriguez*, 411 U.S. at 33, 93 S.Ct. at 1296.

**6.** The Supreme Court pointed out that *Tinker* was a first amendment case, *not* a right to dress case: "The problem posed ... does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment ... Our problem involves direct, primary First Amendment rights akin to 'pure speech.'" *Tinker v. Des Moines Independent Community School District*, 393 U.S. at 508, 89 S.Ct. at 738.

that it may be branded arbitrary, and, therefore, a deprivation of Plaintiff's liberty interest in his personal appearance. *Johnson,* 425 U.S. at 248, 96 S.Ct. at 1446.

Similarly, see various Circuit Court decisions, including the following observations of Mr. Justice Stevens, while he was on the Circuit bench:

> Even if we assume for purposes of decision that an individual's interest in selecting his own style of dress or appearance is an interest in liberty ... every restriction on that interest is not an unconstitutional deprivation ... no absolute right to an unfettered choice of appearance has ever been recognized; matter of appearance and dress have always been subjected to control and regulation, sometimes by custom and social pressure, sometimes by legal rules. A variety of reasons justify limitations on this interest. They include a concern for public health or safety, a desire to avoid specific forms of antisocial conduct, and an interest in protecting the beholder from unsightly displays ... Therefore, just as the individual has an interest in a choice among different styles of appearance and behavior, and a democratic society has an interest in fostering diverse choices, so also does society have a legitimate interest in placing limits on the exercise of that choice.

*Miller v. School District, Number 167, Cook County, Ill.,* 495 F.2d 658, 664 (7th Cir.1974) quoted in *East Hartford Ed. Ass'n. v. Bd. of Ed. of East Hartford,* 562 F.2d 838, 854-55 (2d Cir.1977).

■ The runner, like the policeman in *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708, has no absolute right to appear as he pleases and, therefore, "[s]tripped of constitutional protection ... [shirtless running] is subject to legitimate governmental proscriptions." *South Florida Free Beaches, Inc. v. City of Miami, Florida,* 734 F.2d 608, 610 (11th Cir.1984).

The present case before this court offers few of the justifications advanced for grooming regulations directed at policemen and teachers.

In *Kelley v. Johnson,* 425 U.S. at 240, 249, 96 S.Ct. at 1442, 1446, a grooming regulation directed at the style and length of a patrolman's hair, sideburns and mustache, was held sufficiently rational to defeat a claim based on the liberty guarantee of the fourteenth amendment due process clause. The Supreme Court considered the hair-length regulation "in the context of the county's chosen mode of organization for its police force" and concluded that the similarity of appearance fostered the "overall need for discipline, esprit de corps, and uniformity" within the police force. *Id.* at 246-47, 96 S.Ct. at 1445-46. The Court upheld such restrictions as a rational means of achieving legitimate objectives. *Id.*

In *Hander v. San Jacinto Junior College,* 519 F.2d 273, 275 (5th Cir.1975), the court distinguished personal appearance regulations directed at teachers from those directed at policemen and firemen, and held unconstitutional a grooming regulation requiring faculty members and all male employees of a junior college "to be clean shaven, wear reasonable hair styles and have no excessively long sideburns."

Although plaintiff correctly asserts that the instant case involves no need for discipline, esprit de corps or uniformity that provided the legitimate objective upon which *Kelley* was upheld, there is a more basic difference between this ordinance and the multitude of hair and grooming regulations that have come before the courts. One forced to cut his hair or shave his beard must, necessarily, appear that way 24 hours a day, in public as well as in the privacy of his home. DeWeese, on the other hand, must be clothed above the waist only on public property within the Town that is not otherwise exempt from the dress regulation. Plaintiff may run shirtless within the Town on private property or public property at the beach or in the vicinity of the beach. Of course, Plaintiff has the unlimited freedom to run shirtless on any jogging path outside the Town so long as conformance to a dress regulation is not required.

The stated objectives advanced by the Town for the imposition of this dress code, discussed herein, were substantiated by testimony in county court. An expert community planner testified that the ordinance "taken ... as a network or a system or ordinances and controls and efforts ... is consistent with all the other things the Town is doing to maintain its visual qualities, ambience, if you will, its traditional image, so it is consistent with all the other measures taken to protect the Town's visual quality." [7] Expert testimony was also received in state court from an expert real estate appraiser on the effect of not having the ordinance:

> It would have an effect of erosion ... over a long period of time, the desirability of residing in that community and of the amenities that are presently offered by the community. It would be one of a number of factors that ... would proceed out of not having similar ordinances to protect those people who have invested in that community from visual nuisances. This is in keeping with the Comprehensive Plan and the proper function of a comprehensive plan and zoning ordinances.[8]

■ It is sufficient to note here that the court finds the Town's articulated goals— (1) maintaining the quality of life, (2) stabilizing land use, (3) maintaining the identity of the Town, and (4) maintaining the Town's role as a residential community— provide a rational basis for the minimal restriction on dress. It is a matter so well known that judicial notice can be taken of the uniqueness of Palm Beach; among small cities, it truly is one of a kind.

Plaintiff has failed to meet his burden of demonstrating that the regulation is arbitrary; therefore, it should be upheld as presumptively valid and not an unconstitutional deprivation of rights guaranteed under the due process clause of the fourteenth amendment.

### FIRST AMENDMENT RIGHT TO FREE SPEECH AND EXPRESSION

In addition to the right to dress, Plaintiff claims a liberty interest in running as a form of expression protected by the first amendment.

Plaintiff believes that the human body is an artistic medium, and that running, as well as other athletic activities, are art forms. DeWeese maintains that by refusing to wear a shirt, he communicates a philosophy to members of the public who observe him about health, fitness and the oneness of mind and body.

Similarly, in *South Florida Free Beaches, Inc. v. City of Miami, Florida,* 734 F.2d at 609–10, where appellants asserted nude sunbathing was a form of expression advocating a freer, more wholesome lifestyle, the Eleventh Circuit affirmed the district court's finding that the first amendment did not clothe plaintiffs with a constitutional right to sunbathe in the nude. The court recognized that "[a] distinction must be made between groups concerned with discussing and promoting a pleasurable activity and those ... merely desiring to pursue that activity." *Williams v. Kleppe,* 539 F.2d 803, 806 n. 9 (1st Cir.1976) in *South Florida Free Beaches, Inc. v. City of Miami, Florida,* 734 F.2d at 610–11.

The courts have delineated a speech-conduct continuum in which pure speech (spoken, written or printed) receives the highest protection, and conduct the least protection under the first and fourteenth Amendments. Midway between those two extremes lies symbolic speech, which is conduct afforded free speech protection.

### Pure Speech

Pure speech, or "speech in its pristine form," is explicitly protected under the first and fourteenth amendments. The Supreme Court has distinguished protection afforded pure speech from that afforded symbolic speech: "We emphatically reject the notion ... that the First and Fourteenth Amendments afford the same kind

---

**7.** Testimony of Mr. Adley, transcript, page 27, lines 6–12.

**8.** Testimony of Mr. Edgar W. Maxwell, transcript, page 46, lines 4–15.

of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as those amendments afford to those who communicate ideas by pure speech...." *Cox v. Louisiana,* 379 U.S. 536, 555–56, 85 S.Ct. 453, 464–65, 13 L.Ed.2d 471 (1965) in *East Hartford Ed. Ass'n. v. Bd. of Ed. of East Hartford,* 562 F.2d 838, 858.

In *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284, the Supreme Court found that a four-letter word was entitled to the first amendment protection afforded speech in its pristine form. Cohen was convicted of disturbing the peace for wearing a jacket with the words "Fuck the Draft" in the corridor of a courthouse. The Court held that a state may not punish the public display or underlying content of a four-letter word. DeWeese's conduct may be distinguished from Cohen's in that the latter criminal offense rested solely upon speech and the asserted offensiveness of the *words* used to convey a message to the public. *Id.* at 18, 91 S.Ct. at 1784.

*Symbolic Speech*

■ Symbolic speech "closely akin to 'pure speech'" also enjoys the protection of free speech, *Des Moines Independent Community School District,* 393 U.S. at 505–06, 89 S.Ct. at 735–36, but remains conduct, subject to governmental regulation. In *Des Moines Independent Community School District,* 393 U.S. at 505, 515, 89 S.Ct. at 735, 741 the Supreme Court stated that the wearing of black armbands by students in contravention of school regulations "to exhibit their disapproval of the Vietnam hostilities and their advocacy of a truce, to make their views known, and, by their example, to influence others to adopt them" constituted symbolic speech.

Similarly, in *Leonard v. City of Columbus,* 705 F.2d 1299, black police officers removed the American flag from their uniforms while picketing police headquarters to protest racially discriminatory practices in the city police department. The Eleventh Circuit ruled that the officers' activities "involved conduct as well as 'pure speech'," but, because "their interest in expressing themselves was substantial," the court determined "that the removal of the flag constituted symbolic speech ... protected under the first and fourteenth amendments." *Id.* at 1303–4.

*Conduct*

■ Conduct, as contrasted with pure speech and symbolic speech, does not enjoy the protection of the first amendment. The Eleventh Circuit has recognized that nudity is conduct, rather than expression, and, as such, merits little, if any, constitutional protection. *South Florida Free Beaches, Inc. v. City of Miami, Florida,* 734 F.2d at 609–10. DeWeese suggests that semi-nude running should enjoy at least as much protection under the first amendment as does nude dancing. Although "[e]ntertainment, as well as political and ideological speech, is protected within the First Amendment guarantee," *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2180, 68 L.Ed.2d 671 (1981), "[m]ere nudity is ... not expressive in the sense that nudity might be in a play or work of art." *South Florida Free Beaches, Inc. v. City of Miami, Florida,* 548 F.Supp. at 57. "[N]udity is protected as speech only when combined with some mode of expression which itself is entitled to first amendment protection." *South Florida Free Beaches, Inc. v. City of Miami, Florida,* 734 F.2d at 610. *Accord, Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).

■ DeWeese's penchant for running without a shirt involves neither pure speech nor the type of conduct akin to pure speech that would constitute symbolic speech. Further, Plaintiff's shirtless running is not entertainment nor is it combined with other expressive conduct entitled to first amendment protection. This court is unwilling to expand free speech to protect a jogger's choice to go barebacked or topless.

■ However, even if this court concedes that shirtless running merits some constitutional protection under the first amendment, the court must balance Plaintiff's interest in free expression against the

Town's goals in requiring runners to wear more clothes than they might care to. The dress restriction imposed by this ordinance while unappealing to DeWeese, is a rational means of promoting the Town's goals.

## RIGHT TO HEALTH THROUGH ATHLETIC EXPRESSION

The right to health, like the right to dress, is not "fundamental" in the constitutional sense and "[i]t is not the province of this Court to create substantive constitutional rights." *Rodriguez*, 411 U.S. at 33, 93 S.Ct. at 1296. Nor is there any citation of legal authority presented that speaks to a liberty interest in the right to health through athletic expression.

DeWeese contends that his liberty interest in the unhindered enjoyment of his faculties includes the right to improve and enjoy his health through athletic activity such as running. Plaintiff, a champion long-distance runner who once dropped out of a race as a result of heat exhaustion, asserts that this ordinance unconstitutionally infringes on his right to health and that he cannot run on hot days if required to wear a shirt.

At a hearing on the first ordinance in state court, evidence was received that a number of runners go topless on hot days, and that the most serious incidence of heat injury for the runner results from running long distances on hot days while wearing a shirt. Gerald O'Connor, M.D., a specialist in internal medicine and nephrology, testified as an expert witness and a runner on the avoidance of heat injury. Although Dr. O'Connor suggested "that people would be better off running without a shirt" in South Florida, he could not recall any articles specifically recommending (as the exclusive prevention against heat injury) that runners run without shirts in hot climates. Instead, Dr. O'Connor summarized the articles on avoidance of heat injury to advise that the runner (1) be acclimated and in shape, (2) drink plenty of fluids, and (3) wear certain types of garments. Indeed, notice can be taken that male runners wore shirts at the recent Olympic (Los Angeles) marathon which was run on a hot day.

Even if this court concedes that there is some liberty interest in the right to health through athletic expression, this ordinance must be upheld as it satisfies the rational relationship test.

## RIGHT TO EQUAL PROTECTION

The equal protection clause of the fourteenth amendment commands that no state may deny the equal protection of the laws to any person within its jurisdiction. However, the Supreme Court "has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways." *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971).

"[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976), *per curiam*. Where the ordinance involves neither situation, the rational-basis standard has consistently been applied. *Id.* at 313, 96 S.Ct. at 2566. As was true in the due process analysis, the classificatory scheme, as adopted by the legislature, is presumed to be valid, and, as the court is aware "that the drawing of lines that create distinctions is peculiarly a legislative task .... [p]erfection in making the necessary classifications is neither possible nor necessary." *Id.* at 314, 96 S.Ct. at 2567. "[T]he crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment." *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972).

DeWeese argues that this ordinance sets forth three classifications that deny the runner the equal protection of the law: that this ordinance distinguishes between (1) the beach or the vicinity of public bathing beaches and non-beach property, (2) public and private property, and (3) those

fourteen years of age or older and those under age fourteen.

These classifications do not burden the exercise of a fundamental right nor do they operate to the peculiar disadvantage of a suspect class, therefore, the rational-basis standard, rather than strict scrutiny should be applied.

Contrary to Plaintiff's allegations, and, unlike its predecessor, this ordinance does not regulate lewdness or indecent exposure. Instead, the purpose of the ordinance is to assist in meeting the goals of the Town's Comprehensive Plan—to maintain the quality of life within the community and preserve the Town's unique historical and physical character.

The classifications bear rational relationships to the Town's stated objectives as set forth in the Comprehensive Plan and the ordinance. First, the distinction between beach and non-beach property is reasonable because beachwear is commonly inappropriate away from the beach areas, and the requirement of an upper body covering in non-beach areas would similarly be inappropriate dress for men at the beach. Second, the distinction between public and private property is a correction of the predecessor ordinance which reached private as well as public areas. The last challenged classification, the distinction between those fourteen years of age or older and those under fourteen, is also upheld in its attempt to define the affected group and eliminate overbreadth problems. Defendants have correctly observed that our laws are replete with valid classifications based on age and levels of maturity (e.g. for driver's licenses, voting, drinking, marriage, etc.), and this ordinance is not objectionable simply because of this age classification.

■ This court concludes that this ordinance does not deny DeWeese the equal protection of the law because all persons unclothed above the waist in areas subject to the dress requirement are treated equally, and the classifications set forth in the ordinance bear a rational relationship to the Town's objectives.

## VAGUENESS AND OVERBREADTH

■ Plaintiff, DeWeese, maintains that this ordinance is void for vagueness and overbreadth and must be struck down as facially invalid and unenforceable against himself or anyone else.

### Vagueness

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First ... we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

*Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). *In accord, Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973). To challenge an ordinance for vagueness, a plaintiff must demonstrate the ordinance is vague as applied to him. *South Florida Free Beaches, Inc. v. City of Miami, Florida,* 734 F.2d at 611.

Section 3 of the ordinance states:

[a] person engaged in recreational activities ... shall have the upper part of his or her body covered in clothing appropriate to and characteristic of the recreational activity being undertaken; however, the choice and style of such clothing shall be at the complete option of the individual but such clothing shall always consist of some garment.

In Section 4, "upper part of his or her body covered" is defined as "clothed above the waist in dress characteristic to the activity being undertaken" and "garment" is defined as "an article of clothing."

Plaintiff contends that this ordinance is unconstitutionally vague as applied to him, and that the objectionable phrases "clothed above the waist" and "clothing appropriate to and characteristic of the recreational

activity being undertaken," which are undefined, offer no guidance to enable a person of reasonable intelligence to comply with the ordinance.

▪ Initially, the court notes that Plaintiff lacks standing to challenge this ordinance as void for vagueness. Even if the outermost boundaries of the ordinance are imprecise, any uncertainty has little relevance where, as here, Plaintiff's conduct "falls squarely within the 'hard core'" of the ordinance's proscriptions. *Broadrick v. Oklahoma*, 413 U.S. at 608, 93 S.Ct. at 2913.

Although "[w]ords inevitably contain germs of uncertainty," *Id.*, the challenged ordinance, which requires that a person be "clothed above the waist" is not impermissibly vague as applied to Plaintiff, because "the ordinary person exercising ordinary common sense can sufficiently understand" that running without a shirt or top is prohibited. *Id.*[9] As DeWeese was completely unclothed above the waist, he cannot now be heard to challenge the ordinance as to which anatomical parts above the waist must be covered and what articles of dress will satisfy the ordinance's requirement of "clothing appropriate to and characteristic of the recreational activity being undertaken."[10]

### Overbreadth

▪ An ordinance is overbroad if "it purports to reach protected as well as unprotected conduct." *Broadrick v. Oklahoma*, 413 U.S. at 610, 93 S.Ct. at 2915. However,

> a person to whom a statute may constitutionally be applied [cannot] ... challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before

the Court.... the Court has recognized some limited exceptions to these principles, but only because of the most weighty countervailing policies ... One such exception is where individuals not party to a particular suit stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves ... Another exception has been carved out in the areas of the First Amendment.

*Id.* at 610–11, 93 S.Ct. at 2915. These exceptions should be applied "sparingly and only as a last resort." *Id.* at 613, 93 S.Ct. at 2916; *Grand Faloon Tavern, Inc. v. Wicker*, 670 F.2d 943, 946 (11th Cir. 1982), *cert. denied*, 459 U.S. 859, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982).

▪ Plaintiff lacks standing to raise the overbreadth issue. DeWeese cannot challenge this ordinance on the grounds that it is unconstitutional as applied to him because shirtless running falls squarely within the proscribed conduct. Nor can Plaintiff challenge the ordinance on the basis that it may be applied unconstitutionally to others, as neither exception set forth in *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 pertains to this situation—the ordinance does not abridge first amendment rights to speech or expression of other persons not before the court, nor is Plaintiff representing the claims of others who cannot protect their own rights.

### EIGHTH AMENDMENT PROTECTION AGAINST EXCESSIVE FINES AND CRUEL AND UNUSUAL PUNISHMENT

The eighth amendment to the United States Constitution provides, "excessive bail shall not be required nor excessive

---

**9.** In *South Florida Free Beaches, Inc. v. City of Miami, Florida*, 734 F.2d at 611, the Eleventh Circuit held that ordinances banning "the practice of being 'insufficiently clothed to prevent improper exposure'" and statute making "it unlawful for a person 'to expose or exhibit his sexual organs' or to appear naked in public" were not unconstitutionally vague as applied to nude sunbathers on a public beach.

**10.** DeWeese questioned which of the following anatomical parts of the body are included in the

phrase "clothed above the waist"—the entire torso, head, neck, arms, shoulders, abdomen, upper back, sides, ribcage and nipples. DeWeese suggests the following articles may satisfy the ordinance's dress requirement—sweatband, visor, wide-brimmed hat, mesh singlet, T-shirt with large holes cut for ventilation, tank top exposing the abdomen, a woman's halter top worn by a man, a transparent plastic bag with arm and head holes, and pasties (as worn by exotic dancers).

fines imposed, nor cruel and unusual punishments inflicted."

Plaintiff claims this ordinance is invalid because it provides a draconian fine for harmless behavior in violation of the eighth amendment since, if convicted for running without a shirt, DeWeese could be required to pay a $500.00 fine.

 However, this ordinance specifically eliminated the imprisonment provision present in its predecessor, and provides for punishment "by a fine as provided by general law for the violation of municipal ordinances." The penalty provision which imposes the same fine as for *all* municipal ordinance violations in the State of Florida does not constitute an excessive fine nor cruel and unusual punishment under the eighth amendment.

CONCLUSION

In summary,[11] this court concludes that this ordinance represents a valid exercise of the Town's police power in that it promotes the general welfare of Palm Beach. The court has found no fundamental rights to dress, speech or health at stake in this case. However, the court has identified a liberty interest in one's personal appearance, which, although protected under the due process clause of the fourteenth amendment, does not survive the rational relationship test which requires this court to uphold the ordinance as presumptively constitutional. Plaintiff's shirtless running is conduct, and, as such, is not entitled to the first amendment protection afforded free speech. Nor is the alleged right to health through athletic expression recognized as a liberty interest by any legal authority. The ordinance survives Plaintiff's equal protection challenge because the classifications employed in the ordinance bear a rational relationship to the Town's objectives. However, Plaintiff lacks standing to challenge the ordinance for vagueness and overbreadth. Finally, the penalty provision of the ordinance does not constitute an excessive fine nor cruel and unusual punishment under the eighth amendment.

Judgment to be entered for defendant.

APPENDIX

ORDINANCE NO. 2–81

AN ORDINANCE OF THE TOWN OF PALM BEACH, PALM BEACH COUNTY, FLORIDA, AMENDING CHAPTER 21 OF THE CODE OF ORDINANCES, TOWN OF PALM BEACH, ENTITLED "OFFENSES AND MISCELLANEOUS PROVISIONS", SO AS TO AMEND SECTION 21–48 THEREOF, "REGULATIONS REGARDING DRESS"; REPEALING ORDINANCE NO. 4–79 OF THE TOWN OF PALM BEACH; AND SUBSTITUTING THIS ORDINANCE THEREFOR: PROVIDING A PENALTY FOR VIOLATION HEREOF; REPEALING ALL ORDINANCES OR PARTS OF ORDINANCES IN CONFLICT HEREWITH; AND PROVIDING FOR AN EFFECTIVE DATE.

WHEREAS, the State of Florida by enacting Chapter 163 of the Florida Statutes has mandated that each municipality within the State of Florida assess its goals, priorities and needsd in order to preserve and enhance preent qualities, overcome present handicaps and prevent or minimize future problems by adopting a Comprehensive Plan; and

WHEREAS, Section 163.165 sets forth that the legislative intent and the provisions of the Local Government Comprehensive Planning Act in its interpretation and application are declared to be the enactment of minimum requirements necessary to promote, protect and improve the public health, safety, comfort, good order, appearance, convenience, morals and general welfare; to conserve the value of land, buildings and resources; and to protect the character and maintain the stability of residential, agricultural, business and industri-

---

**11.** The undersigned judge was running or jogging fifteen to twenty years before it became fashionable. The court, therefore, personally understands plaintiff's indignation at wearing a shirt while running during the subtropical summer. Plaintiff's clear remedy is available by political means, not by litigation. The court's findings are set forth in extensive detail in the hope of ending this matter in the courts once and for all.

al areas and to promote the orderly development of such areas; and

WHEREAS, the Town of Palm Beach in compliance with the mandate of the State of Florida did enact this Comprehensive Plan in the form of Ordinance No. 13–79 of the Town of Palm Beach, Florida, enacted September 25, 1979, with its required objectives stated, in part, to be: "To maintain the quality of life which has given the Town its unique, physical and historic character and, towards its objective to take all legally and technically available measures to stabilize the Town's land use . . . and further to maintain the Town's identity and quality of life by maintaining the Town's unique physical and historical character with emphasis on visual qualities associated with the subtropical water-oriented environment and to maintain the role of the Town as a predominantly residential community adding only the type and amount of business and other support services to provide for the needs of the Town's residents and their visitors . . . "; and

WHEREAS, the Town of Palm Beach has received the advice of its planning consultants and experts on maintaining land values and said experts have advised the Town of Palm Beach that because of its unique character and history it is in the interest of the public health, safety and welfare of the citizens of the Town of Palm Beach and its visitors, in order to meet and maintain the goals of the Town's Comprehensive Plan, to, in concert with other regulations and ordinances, minimally regulate the attire of citizens and visitors within certain limited and defined areas in the Town of Palm Beach; and

WHEREAS, the purpose and intent of the Town of Palm Beach in enacting certain minimal regulations regarding the attire of citizens and visitors is solely related to the Town's attempt to maintain the quality of life within the community and preserve the Town's unique historical and physical character and is not intended for the purpose of attempting to define or impose any moral code on individuals or otherwise impair or restrict individual rights not otherwise governed by the general law;

NOW, THEREFORE,

BE IT ORDAINED BY THE TOWN COUNCIL OF THE TOWN OF PALM BEACH, PALM BEACH COUNTY, FLORIDA, as follows:

Section 1: Section 21–48 of the Code of Ordinances, Town of Palm Beach, is hereby repealed and this Ordinance shall serve in its place and stead.

Section 2: It shall be unlawful for any person to appear in any public place in the Town of Palm Beach without the upper part of his or her body covered. This section shall not apply to private property or public bathing beaches and the immediate vicinity of public bathing beaches.

Section 3: A person engaged in recreational activities in public places and facilities in the Town of Palm Beach, where such recreational activities are otherwise permitted and which are not areas excluded from the operation of this Ordinance by Section 2, shall have the upper part of his or her body covered in clothing appropriate to and characteristic of the recreational activity being undertaken; however, the choice and style of such clothing shall be at the complete option of the individual but such clothing shall always consist of some garment. Such recreational activities and places shall include, but not be limited to:

a. Golf on public golf courses.

b. Tennis on public tennis courts.

c. Walking, bicycling, jogging, running, skating or skateboarding on Town facilities or rights-of-way where such activity is not otherwise prohibited.

Section 4: *Definitions:* As contained in this Ordinance the following definitions shall apply:

a. "Upper part of his or her body covered" shall mean clothed above the waist in dress characteristic to the activity being undertaken by the individual at any particular time. There are no activities for which some dress above the waist is not required.

b. "Vicinity of public bathing beaches" shall mean within 150 feet of an ocean beach.

c. "Beach", as used in this Ordinance, shall mean the landward most portion

of the sandy area adjacent to the Atlantic Ocean.

d. "Garment" shall mean an article of clothing.

e. "Person" or "individual" shall mean a male or female, 14 years of age or older.

Section 5: *Penalties:* Any person who shall violate any of the terms, provisions or conditions of this Ordinance shall, upon conviction thereof, be punished by a fine as provided by general law for the violation of municipal ordinances but shall not be subject to imprisonment.

Section 6: If any provision, section, paragraph, sentence or phrase in this Ordinance shall for any reason be found to be invalid or inoperative, or shall be held by any court to be unconstitutional, the remainder of the provisions of this Ordinance shall, nevertheless, continue in full force and effect.

Section 7: That all ordinances or parts of ordinances in conflict herewith be and the same are hereby repealed.

Section 8: That this Ordinance shall take effect immediately upon its passage and approval, as provided by law.