**Grazyna ZALEWSKA, Plaintiff,**

v.

**COUNTY OF SULLIVAN, NEW YORK, Judith Maier, and Terence O'Neill, Defendants.**

**No. 01 CIV. 0139(DC).**

United States District Court,
S.D. New York.

Jan. 9, 2002.

---

Robert N. Isseks, Middletown, NY, Henri Shawn, Monticello, NY, for Plaintiffs.

Appelbaum, Bauman & Appelbaum by Michael Frey, Liberty, NY, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Grazyna Zalewska was employed by defendant County of Sullivan (the "County") as a van driver from January, 1996 until April, 2000. When the County adopted a pants uniform for its van drivers, Zalewska asked to wear a skirt because of her "deeply held cultural beliefs." Her request was denied. She continued to wear a skirt and was consequently transferred to a different County position. This action followed. Before the Court are the parties, cross-motions for summary judgment in lieu of trial. For the reasons that follow, judgment will be entered in favor of defendants dismissing the complaint.

## BACKGROUND

### A. *The Facts*

As a van driver for the Sullivan County Transportation Department (the "Transportation Department"), Zalewska transported food from the County's main kitchen to various nutrition sites where senior citizens were fed in a "Meals on Wheels" program. (Stipulated Facts at ¶ 6). She was also responsible for transporting senior citizens between their residences and the nutrition sites. (*Id.*). Individual defendant Terence O'Neill was the Transportation Coordinator of the Transportation Department; individual defendant Judith Maier was and is the Commissioner of the Sullivan County Department of Family Services, as well as the chief administrative officer and policy maker of the Transportation Department. (*Id.* at ¶¶ 3–4).

In June, 1999, O'Neill began to consider using uniforms for the Transportation Department to "project a more professional appearance on behalf of its drivers, to encourage its customers to be more respectful of the drivers, to foster a positive esprit-de-corps among drivers and to project an overall positive appearance for the County of Sullivan in its ongoing efforts to promote itself." (*Id.* at ¶ 7). Defendants also were of the view that "pants are safer than skirts for the operators of vans, particularly vans with chair lifts, as the operator must assist customers on and off the vehicle." (*Id.*).[1]

On December 1, 1999, defendants instituted a policy requiring all Transportation

---

1. The set of stipulated facts submitted to the Court notes that these are the justifications for the Transportation Department's choice to require uniforms, according to defendants.

Department employees to wear a uniform while working. (*Id.*). The uniform consisted of a shirt, jacket, and pants. (*Id.*). The policy was adopted after consultation with Zalewska's union, and a written agreement between the County and the union acknowledged that all drivers would have to wear the uniform or face disciplinary action. (*Id.* at 8–9). Subsequently, Zalewska and her co-workers were informed of the policy and that they would be fitted for their uniforms. (*Id.* at ¶ 10).

Zalewska asked O'Neill why she could not wear a skirt as an element of her uniform; O'Neill responded, in substance, that the policy would not be altered and that no exception would be made for her. (*Id.* at ¶ 11). When Zalewska went to her uniform fitting, however, she requested a skirt, and was fitted for a skirt by the private vendor. (*Id.* at ¶ 11(b)). The County had not authorized either Zalewska or the vendor to replace pants with a skirt. (*Id.* at ¶ 12).

In March, 2000, Zalewska picked up her customized uniform of skirt, jacket, and shirt, and began wearing it to work. (*Id.* at ¶ 12). Except for the fact that Zalewska's uniform included a skirt, it was the same uniform worn by her co-workers. Zalewska asserts that she worked in her altered uniform for three weeks without incident. (*Id.* at ¶ 14). Zalewska refused to wear pants because "as a matter of familial and cultural custom, she has never worn pants in her life, and the wearing of a skirt constitutes … an expression of a deeply held cultural value." (*Id.* at ¶ 22).

On April 17, 2000, O'Neill informed Zalewska that (1) she would be suspended if she did not return the skirt uniform; and (2) she could report to work only if she agreed to wear pants. (*Id.* at ¶ 17). The next day, Zalewska was notified that defendants were preparing charges of misconduct and insubordination against her. In the charges, defendants accused Zalewska of (1) refusing to return items that were charged to and paid for by the Transportation Department, and that said items were gained without authorization from her employer; and (2) refusing to report to work in the appropriate authorized uniform. (*Id.* at ¶ 18).

Zalewska has been suspended from her position as van driver; she continues to work for the County in a different position, receiving the same pay. (*Id.* at 19–20). During her employment as a van driver, Zalewska performed all of her duties and fulfilled all of her responsibilities in a competent and professional manner. (*Id.* at 20).

## B. *Prior Proceedings*

This case was filed on January 8, 2001. The complaint seeks damages under 42 U.S.C. §§ 1981 and 1983 and alleges that defendants deprived plaintiff of her Constitutional rights under the First and Fourteenth Amendments of the Constitution of the United States. The case was originally before Judge Barrington D. Parker, Jr., and was reassigned to the undersigned when Judge Parker was appointed to the Second Circuit.

■ The parties have submitted a set of stipulated facts and summary judgment motions in lieu of trial, and now ask this Court to render its decision based on those stipulated facts. A court may conduct a bench trial based on the record compiled in summary judgment proceedings, without the benefit of testimony, so long as the parties clearly waive their right to a full

---

While plaintiff argues that the Transportation Department's choice unduly and irrationally restricts her rights, she does not argue that the choice was in any way pretextual and offers no evidence of pretext. Accordingly, the Court finds that defendants' stated justifications are the actual justifications for the new policy.

trial. *See Acuff–Rose Music, Inc. v. Jostens, Inc.,* 155 F.3d 140, 142 (2d Cir.1998). "The possibility of confusion between a summary bench trial and summary judgment is particularly acute," *see id.,* but here the parties clearly understood the difference and were waiving their right to a trial. (*See* Frey Aff. at ¶ 2) ("This motion and plaintiff's cross-motion for summary judgment are being submitted to the Court pursuant to an agreement reached between the parties and the Court, whereby a stipulation of facts is simultaneously being submitted with the understanding that the Court will decide all issues contained therein.").

## *DISCUSSION*

Zalewska argues that defendants' conduct violates both the Due Process Clause and the First Amendment. Ultimately, however, these arguments fail, and defendants' motion for summary judgment must be granted.

### I. *Plaintiff's Due Process Argument*

Plaintiff's due process argument raises two issues; first, whether a public employee has a liberty interest in choice of clothing, and, second, if such an interest exists, whether defendants violated that interest by requiring that Zalewska wear pants rather than a skirt.

■ While the Supreme Court has never ruled directly on the issue, it has assumed the existence of a liberty interest in personal appearance. *See Kelley v. Johnson,* 425 U.S. 238, 244, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) (assuming a liberty interest in matters of personal appearance when validating a county's hair grooming regulation for male members of its police force). Since *Kelley,* the nation's courts have assumed or found the existence of such an interest in a veritable fashion show of different factual scenarios. *See Rathert v. Village of Peotone,* 903 F.2d 510 (7th Cir.1990) (holding that off-duty police officers wearing ear studs have a liberty interest in personal appearance while upholding a prohibition against wearing ear studs as rationally related to legitimate public interests); *see also DeWeese v. Town of Palm Beach,* 812 F.2d 1365, 1367, 1369–70 (11th Cir.1987) (holding that shirtless male runner had protected liberty interest in his personal dress); *Domico v. Rapides Parish School Bd.,* 675 F.2d 100, 101–02 (5th Çir.1982) (holding that there is a constitutional liberty interest in choosing how to wear one's hair); *East Hartford Educ. v. Bd. of Educ. of East Hartford,* 562 F.2d 838, 855 (2d Cir.1977) (*en banc*) (assuming for the purposes of decision that public school teacher challenging dress code requiring male teachers to wear ties had an interest in selecting his own style of dress); *Hodge v. S.T. Lynd,* 88 F.Supp.2d 1234, 1239 (D.N.M.2000) (assuming that patron of county fair had liberty interest in choice to wear baseball cap backwards). Accordingly, this Court assumes that Zalewska has a liberty interest in her personal appearance.

■ The proper constitutional test to apply in determining whether the uniform requirement violated Zalewska's liberty interest is the rational basis test. *East Hartford,* 562 F.2d at 861; *see also DeWeese,* 812 F.2d at 1369–70. "The first requirement in applying this test is to define the government's goals carefully." *Hodge,* 88 F.Supp.2d at 1242. Defendants' stated interests in imposing the "pants-only" uniform requirement is two-fold; to give the van drivers a more "professional appearance" and to promote safety in loading, unloading, and otherwise operating the vans.

■ Zalewska has not sought the protection of the Fourteenth Amendment as a member of the citizenry at large, but as a public employee—a distinction the courts find "highly significant." *Kelley,* 425 U.S.

at 245, 96 S.Ct. 1440 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)); *see, e.g., Tardif v. Quinn*, 545 F.2d 761, 763 (1st Cir.1976) ("Whatever constitutional aspect there may be to one's choice of apparel generally, it is hardly a matter which falls totally beyond the scope of the demands which an employer, public or private, can legitimately make upon its employees.") (citations omitted). In fact, the validity of government-imposed dress codes and uniform requirements "depend[s] on the nature of the arena in which the government sought to regulate." *Hodge*, 88 F.Supp.2d at 1243. While "ordinances attempting to regulate what the general public wears, on public streets and in other public areas" are routinely struck down, "in more restricted environments, such as schools and other instances of government employment ... dress codes or appearance requirements in general have often been upheld against constitutional challenge." *Id.* (citations omitted). Accordingly, the Court finds that defendants have a legitimate interest in promoting safety and professionalism in the operation of its vans by regulating the appearance of its van drivers.

The next step in the inquiry is to determine whether the uniform requirement is rationally related to defendants' legitimate concern. In light of Zalewska's status as a public employee, defendants' stated safety concerns, and the fact that government is accorded "wide latitude" in "the dispatch of its own internal affairs," *Kelley*, 425 U.S. at 247, 96 S.Ct. 1440 (quotations and citations omitted), I conclude that defendants' choice of a pants uniform is not irrational. Moreover, according to the stipulated facts submitted by the parties, the "pants-only" requirement applies only to those working as van drivers and only applies while the van drivers are working. Finally, the County's refusal to permit individual van drivers to substitute skirts for pants is not irrational. The substitution of skirts for pants on an individual basis would lead to a less consistent appearance and would make it more difficult for the County to enforce the policy. Moreover, although some skirts would not create safety issues, other skirts, for example, could interfere with a van driver's ability to help a wheelchair-bound passenger on and off the van, depending on the length and fullness of the skirt. Therefore, Zalewska's Due Process argument fails.

## II. *Plaintiff's First Amendment Argument*

■ Zalewska's First Amendment argument also prompts two questions: First, whether the wearing of a skirt is "symbolic speech" protected against governmental interference by the First Amendment, and, if so, whether defendants violated Zalewska's First Amendment rights by requiring her to wear pants.

The Supreme Court has repeatedly refused to "accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Therefore, the question in this case is not whether Zalewska intended to communicate a message through the wearing of a skirt, but whether the wearing of a skirt communicates a religious, political, or other particularized message that would be understood by those who viewed it. *See Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); *see also Olesen v. Bd. of Educ. of School Dist. No. 228*, 676 F.Supp. 820, 822 (N.D.Ill.1987) (citing *Spence v. Washington*, 418 U.S. 405, 410–11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974)).

According to the stipulated facts, Zalewska refused to wear pants because "as

a matter of familial and cultural custom, she has never worn pants in her life, and the wearing of a skirt constitutes ... an expression of a deeply held cultural value." In her memorandum of law, Zalewska makes another argument, claiming that "a woman's choice to wear 'items of clothing that are traditionally labeled women's clothing is, per se, sufficiently imbued with elements of communication to fall within the scope of the First Amendment." (Pl. Mem. at 11–12).

Given the uncertainty of Zalewska's intended message, it is extremely unlikely that any message could be communicated to a viewer. No reasonable viewer could glean any message from the fact that Zalewska wore a skirt rather than pants as part of her van driver uniform. Furthermore, choices of clothing have been deemed non-expressive conduct when the clothing contains "no written communication or symbols of any kind." *Hodge,* 88 F.Supp.2d at 1237. On the other hand, there are some situations where the choice to wear women's clothing does convey a message. In *Doe v. Yunits,* a fifteen-year-old biologically male high school student diagnosed with gender identity disorder was granted a temporary restraining order permitting her to attend high school wearing clothes with her female gender identity. *Doe v. Yunits,* 2000 WL 33162199 (Mass.Super. Oct. 11, 2000). The court noted that "plaintiff's ability to express herself and her gender identity through dress is important to her health and well-being, as attested to by her treating therapist." *Id.* at *3. I conclude, in the circumstances of this case, however, Zalewska's wearing of a skirt rather than pants as part of her van driver uniform was not protected speech.

Even assuming that Zalewska's wearing of a skirt rather than pants constitutes expressive conduct within the meaning of the First Amendment, it does not necessarily follow that the County could not regulate this "expressive conduct." *See Johnson,* 491 U.S. at 401, 109 S.Ct. 2533. "As conduct becomes less and less like 'pure speech' the showing of governmental interest required for its regulation is progressively lessened." *East Hartford,* 562 F.2d at 858. In *United States v. O'Brien,* the Supreme Court set forth an analytical framework to evaluate content-neutral restrictions on expression, such as the "pants only" requirement. 391 U.S. at 377, 88 S.Ct. 1673. The Court made clear that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *See id.* at 376, 88 S.Ct. 1673. Accordingly, the Court held that "a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *See id.* at 377, 88 S.Ct. 1673.

Applying the *O'Brien* test to the instant case, I conclude that defendants did not violate the First Amendment. First, there is no question that the defendants have the power to adopt a mandatory uniform policy. Second, the County's interests in safety—both for its drivers and for the senior citizens being loaded and unloaded from the vans—and in promoting professionalism are important ones. Third, defendants' interest in public safety is completely unrelated to the suppression of Zalewska's expression. Finally, the incidental restrictions on Zalewska's expression are minimal. The restrictions pertain only to Zalewska's attire while working as

a van driver, and the message she is seeking to send, in any event, is uncertain. *See Littlefield v. Forney Indep. School Dist.*, 268 F.3d 275, 287 (5th Cir.2001). Moreover, Zalewska was allowed to continue working for the County wearing the clothing of her choice—albeit in a different position. On these facts, there is no First Amendment violation.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted, and the case is dismissed, with prejudice and costs but without attorneys' fees. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.